1   **TRANSCRIBED FROM DIGITAL RECORDING**

2              IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4
     FLORENCIO CRAIG,              )     Docket No. 23 CV 2993
5                                  )
             Plaintiff,            )
6                                  )
        vs.                        )     Chicago, Illinois
7                                  )     August 7, 2024
     LATOYA HUGHES, Acting         )     1:39:43 o'clock p.m.
8    Director of the Illinois      )
     Department of Corrections,    )
9                                  )
             Defendant.            )
10
                  TRANSCRIPT OF PROCEEDINGS - Motion
11      BEFORE THE HONORABLE M. DAVID WEISMAN, Magistrate Judge

12   APPEARANCES:
     For the Plaintiff:        THOMAS G. MORRISSEY LTD
13                             BY:  MR. PATRICK W. MORRISSEY
                                    MR. THOMAS G. MORRISSEY
14                             10257 South Western Avenue
                               Chicago, Illinois 60643
15
     For the Defendants:       ILLINOIS ATTORNEY GENERAL'S OFFICE
16                             BY:  MR. JAMES A. ROBINSON
                                    MR. MICHAEL NORTON
17                             115 South LaSalle Street
                               28th Floor
18                             Chicago, Illinois 60603

19

20
     Transcriber:
21                  Laura LaCien, CSR, RMR, F/CRR
                        Official Court Reporter
22                    219 South Dearborn Street
                             Suite 1728
23                    Chicago, Illinois 60604
                           312.408.5032
24

25   NOTE:  PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION**

1    (Proceedings heard in open court:)

2         COURTROOM DEPUTY:  23 CV 2993, Craig versus Hughes.

3         THE COURT:  Good afternoon.  For plaintiff?

4         MR. T. MORRISSEY:  Good afternoon, your Honor.

5    Thomas Morrissey on behalf of the plaintiff class.

6         MR. P. MORRISSEY:  Patrick Morrissey on behalf of

7    the plaintiff.

8         THE COURT:  Good afternoon, Mr. Morrissey and

9    Mr. Morrissey.

10        For IDOC defendants.

11        MR. ROBINSON:  Good afternoon, your Honor.  James

12   Robinson from the Office of Attorney General.  I have with me

13   Mr. Michael Norton.  Mr. Norton was licensed by the State of

14   Illinois in 2013, has been admitted to the Central District

15   of Illinois, and his application to this Court is currently

16   pending.  He's been working on this case and I think he'll be

17   able to provide helpful information today but I obviously

18   wanted to apprise the Court of that detail.

19        THE COURT:  Perfect.  I appreciate the information.

20        Mr. Norton, welcome to the Court.

21        MR. NORTON:  Good morning.

22        MR. ROBINSON:  And one last quick thing --

23        THE COURT:  Yep.

24        MR. ROBINSON:  -- an attorney named Amy Crawford

25   filed an appearance but she unfortunately is in D.C. today.

1      THE COURT:  All right.  All right.  So thanks for

2   the status report.  I've got some questions on that.

3      Page 1, first paragraph, "defendant sent an email

4   with the last known addresses for the putative class."

5   Defense is working to produce a spreadsheet.

6      When do we think that's going to happen?  That's

7   the least of our problems, but I'm just trying to figure that

8   one out.

9      MR. ROBINSON:  I think I could do that in a week,

10  Judge.

11     THE COURT:  Okay.  One week for the spreadsheet of

12  the last known address for putative class members.

13     Okay.  Page 2, the depositions.  So I'm looking at

14  Mr. Kane, Superintendent Hunter, and this Rule 30(b)(6)

15  witness from July 11th.  Good news is a lot of the

16  depositions have been covered.  Those three look outstanding.

17  What are we thinking about those?

18     MR. ROBINSON:  We're identifying some people on the

19  30(b)(6) notice.  I believe that some of these people have

20  been previously identified.  We'll be able to testify to some

21  of those topics.  We're talking with somebody from the

22  Transfer Coordinator's Office to provide some testimony as

23  well.  You know, Darren Hunter is at the NRC.  I don't think

24  he'll be too tough to schedule.  I have had a little bit of

25  trouble getting ahold of Patrick Kane.

1    THE COURT:  Is he no longer with the State?

2    MR. ROBINSON:  That's -- yes, your Honor.

3    THE COURT:  What do you need Mr. Kane for,

4    Mr. Morrissey or Mr. Morrissey?

5    MR. T. MORRISSEY:  Well, the -- he apparently was

6    the former ADA coordinator for the IDOC and they responded

7    yesterday to requests to admit and there was one outstanding

8    matter which they denied -- they admitted everything else --

9    is "defendant has no knowledge why the stainless steel

10   folding security shower seats weren't put in" and they denied

11   that.  So we think --

12   THE COURT:  So read the request to admit verbatim.

13   MR. P. MORRISSEY:  So the request to admit is

14   "defendant has no knowledge of why the stainless steel

15   folding security shower seats depicted in the architectural

16   drawings --" and there's a Bates stamp number "-- for

17   Pinckneyville are not as of January 1st, 2022, in any of the

18   showers in Housing Unit 1 to 4."  So that's a central --

19   THE COURT:  And then they deny --

20   MR. P. MORRISSEY:  They deny that.

21   THE COURT:  Okay.  So that the logical implication

22   is they do have some knowledge as to why it didn't happen?

23   MR. P. MORRISSEY:  Correct.  And before Court this

24   morning, we spoke with defense counsel and I guess they're

25   trying to figure out why these shower benches aren't

1    installed in the showers.

2          We want to pursue the reason why, whether they made

3    a decision there was a security risk or a safety issue.  They

4    haven't disclosed anybody to support this proposition.  They

5    haven't produced any documents explaining why there are no

6    shower benches in Pinckneyville and it's one significant

7    issue that I believe is outstanding based on the written

8    discovery.

9          So Mr. Kane may have information because he was the

10   prior ADA coordinator or whoever else from the defendant's

11   office who knows about this, I think, would be the

12   appropriate person to address this issue.

13         THE COURT:  All right.  Let's talk about Mr. Kane

14   first.  So if he's no longer working for the State, is --

15   that's what I'm understanding, Mr. Robinson; is that right?

16         MR. ROBINSON:  That's my understanding.  Yes,

17   Judge.

18         THE COURT:  All right.  So have you provided a last

19   known address?  It sounds like you're taking the yeoman's

20   task of finding him and getting him prepared.  But if he's

21   not an employee of the state, there's -- you know, I'm

22   not -- I'm open to discussion about this but otherwise I'm

23   going to give the Morrisseys a chance to find him themselves

24   and, you know, do what they're going to do.

25         MR. ROBINSON:  Yeah.  I mean, I've tried to find

1    him.  At one point, I had his personal cell number because I

2    presented him in depositions in early COVID times.  You know,

3    my concern is, you know, we're talking about 1998 and I'm

4    fairly confident that he wasn't the ADA administrator in 1998

5    and --

6                    THE COURT:  But every day, every month, every year

7    after 1998 when those --

8                    MR. ROBINSON:  Yeah.

9                    THE COURT:  -- benches were or were not there, he

10   may understand why --

11                   MR. ROBINSON:  Yeah.

12                   THE COURT:  -- that happened or didn't happen?

13                   MR. ROBINSON:  Yeah.

14                   THE COURT:  So I'm still not tracking.  What --

15   what are you -- are you promising you're going to find him?

16   What are you doing?

17                   MR. ROBINSON:  I can't promise -- yeah, I can't

18   promise I'll find him.  I can promise I'll work in good faith

19   to work with the Morrisseys to get them information to locate

20   him.

21                   THE COURT:  Did he retire from the state?

22                   MR. ROBINSON:  That's my understanding, Judge.

23                   THE COURT:  Okay.  So someone has the last known

24   address for him, right?

25                   MR. ROBINSON:  Somebody should, yeah.

1            THE COURT:  What do you want to do?

2            MR. T. MORRISSEY:  Well, it would help if they gave

3    us the last known address and then we would subpoena him.

4            THE COURT:  Well, the -- right.  So we can do that

5    or you can give them some more time to try and get this done.

6    It's -- you tell me because the last known address doesn't

7    mean he's served, right, that just is a step toward serving

8    him?

9            MR. P. MORRISSEY:  Right.  There's one other issue

10   we spoke to with them about before court and we received

11   these admission responses yesterday.  We can serve a 30(b)(6)

12   seeking their factual basis for the denial and explain why in

13   Building 1, 2, 3, and 4 there are no shower seats to give

14   them an opportunity and that could be a way to address this

15   issue as well.

16           THE COURT:  Oh.  So say we don't need Mr. Kane,

17   just give us someone you can get up to speed -- who can get

18   up to speed on this issue?

19           MR. P. MORRISSEY:  Right, because --

20           THE COURT:  Because obviously someone must have

21   some reason because they denied that they have no

22   reason -- they denied your allegation or request to admit.

23           MR. P. MORRISSEY:  Right.

24           THE COURT:  What do you think of that,

25   Mr. Robinson?

1      MR. ROBINSON:  That makes sense.  And what I told

2   counsel is, it's the word "knowledge" that's tripping me up.

3   I don't imagine, you know, that somebody will have a memo

4   that, you know, in 19 -- you know, October 3rd, 1998, I, Bob

5   Smith, made the determination that these benches would create

6   a safety and security risk.

7      I don't want to be foreclosed from offering

8   testimony from somebody saying, well, it makes sense to me

9   that this is a reason why it would have been done and, you

10  know, that would be subject to cross examination.  So

11  that's --

12     THE COURT:  Well, that's just speculation, right?

13  There's no foundation for that.  There's -- that's exactly

14  what the Morrisseys are trying to avoid.  So I think -- and I

15  don't think you were here with us last time, but the

16  Morrisseys made pretty clear that, you know, if the case

17  can't get settled, they're looking towards summary judgment.

18  They want to make sure certain facts are not going to be in

19  dispute for summary judgment which is why this whole thing

20  about the facilities that allegedly did have the benches were

21  in place -- I can't remember which of the Morrisseys told me

22  this but made perfect sense -- which was "if they are used in

23  other facilities, it seems that there wouldn't be a safety

24  risk involved."  If IDOC is saying it's okay in Facility A,

25  it should be okay in the NRC and Pinckneyville so --

1          MR. ROBINSON:  Yeah.

2          THE COURT:  -- it made sense.  I understand why "no

3    knowledge" may be tripping you up, but the -- by denying

4    that, then you're saying that as an -- as an entity, you have

5    some knowledge as to why this didn't happen.  And it -- if

6    your knowledge is, well, we could come up with a reason

7    ex post facto that either suffers from it's not a legitimate

8    reason because it's just come up with a reason after the fact

9    or it's speculation.  I -- my guess is it's this.

10          But if as a corporate entity you don't have a

11    reason for not doing this, then you need to admit that or put

12    a 30(b)(6) witness up there which says that these are all

13    guesses, I've done my best to try and figure it out but I

14    can't find anything out.

15          So I think the 30(b)(6) route is a good one.  And I

16    guess, Mr. Robinson, I'll give you a day or two to think

17    about it.  But if -- if your suggestion that Mr. Kane who has

18    been a long -- was a long-time ADA administrator, he's

19    retired now, he's not really going to help us solve this

20    riddle, that's fine.  I don't know who answered the request

21    to admit because whoever denied it must have had a good faith

22    basis to do it.

23          UNIDENTIFIED MALE SPEAKER:  Yeah.

24          THE COURT:  So, you know, I will -- here, I'll give

25    you -- do we have a close of fact -- I know we have a close

1    of fact discovery.

2            MR. ROBINSON:  I believe it's on the 30th of this

3    month, your Honor.

4            THE COURT:  Okay.  I'll give you until August 9th

5    to either provide Mr. Kane's last known address or agree to a

6    30(b)(6) deposition limited -- I know you have other

7    30(b)(6)s, but this agreement would be limited to the basis

8    for answering that interrogatory -- I'm sorry, basis for

9    denying the request to produce.

10           MR. P. MORRISSEY:  Your Honor, we'd prefer to have

11   the 30(b)(6).  I've drafted this and I was going -- we

12   reviewed it before court today and I was going to send it to

13   you but I didn't want to ambush defense counsel before coming

14   to court.

15           I think it would be more appropriate in line with

16   these admission responses that we received yesterday just to

17   have them to explain the factual basis for the denial.

18           THE COURT:  What do you think of that,

19   Mr. Robinson?

20           MR. ROBINSON:  I'd -- I'd like a few days to

21   consider whether or not to file amended responses to the

22   request to admit.

23           THE COURT:  Oh, that's fine.  So -- okay.  Either

24   by -- I appreciate that.  By August 9th either agree to a

25   30(b)(6) deposition or amend your response to it, to the

1    request to admit at issue.

2            So that deals with Mr. Kane, correct, Mr. Morrissey

3    and Mr. Morrissey?

4            MR. T. MORRISSEY:  Yes, your Honor.

5            THE COURT:  Okay.  Then Superintendent Hunter, when

6    is that going to get done, Mr. Robinson?

7            MR. ROBINSON:  So my understanding is

8    Superintendent Hunter was he had some testimony at his dep

9    that he believed that benches had been installed and then I

10   followed up with -- through Legal at IDOC to follow up with

11   Mr. Hunter who said actually I was mistaken.  I -- I --

12   again, I --

13           THE COURT:  Mr. Hunter said he was mistaken?

14           MR. ROBINSON:  Yeah.  So I -- you know, I'm --

15   forgive my ignorance as to the overall knowledge of Hunter's

16   deposition.  How long would Mr. Hunter's dep be?  I mean,

17   he's at the NRC, Judge, so that's -- I don't think that will

18   be a big problem.

19           THE COURT:  Yeah.

20           MR. ROBINSON:  I know we're scheduling other deps.

21   We're going to be there.

22           MR. T. MORRISSEY:  If the defendants gave us a

23   declaration that there haven't been benches installed in the

24   NRC, that would be sufficient.  We wouldn't have to take, you

25   know, a continuous deposition.

1          THE COURT:  Mr. Robinson?

2          MR. ROBINSON:  Yeah.  I should be able to do that.

3          THE COURT:  Okay.  Do you think you can get that

4    done by Friday by a week from today?  What are you thinking?

5          MR. ROBINSON:  Can we have -- I mean, would the

6    14th work, counsel?  I would love to -- there's going to be a

7    dep tomorrow.  I'd love to be able to hand it to him at the

8    dep tomorrow, Judge, you know.

9          THE COURT:  Well, if I give you until the 14th,

10    nothing stops you from doing it tomorrow.

11          MR. ROBINSON:  Right, right.  Yeah.  I -- there

12    should be no reason why my client who is emailing me

13    something can't sign that same thing in a declaration.

14          THE COURT:  Yeah.

15          MR. ROBINSON:  I just don't want to overpromise to

16    your Honor or to counsel.

17          THE COURT:  8-14, does that work?

18          MR. T. MORRISSEY:  That's fine with us, your Honor.

19          THE COURT:  Okay.  8-14, declaration clarifying the

20    deposition testimony of Superintendent Hunter.

21          Okay.  Okay.  So then on the III b, this is the

22    architectural drawing.  So you provided -- you were ordered

23    and did provide architectural drawings but it does not

24    include the shower rooms which is what, as I understand, the

25    case is mainly about, so.

1    MR. T. MORRISSEY:  What we got is a cover sheet

2    for -- by the architects.  And on the cover sheet, it

3    indicates in the shower there's the folding bench, but

4    there's all kinds of exhibits to the cover sheet which

5    we presume -- and we took the operating engineer's

6    deposition, Chris Smith, and he indicated that there should

7    be a plumbing diagram which reflects the benches so that's

8    what we're looking for.

9    They sent us -- we've been paying for the copying

10   of it.  They sent it over to this copy service in Southern

11   Illinois but they sent us an additional drawing which didn't

12   cover showers.  It covered the cells and other areas in the

13   housing unit but it didn't -- it didn't have the information

14   we needed in regards to the shower area.

15   THE COURT:  So, Mr. Morrissey, explain to me the

16   value of the drawing if people are saying there should have

17   been -- there are -- there were benches planned for.  Has

18   someone testified to that?

19   MR. P. MORRISSEY:  They admitted that the drawings

20   depict folding stainless steel showers --

21   THE COURT:  Okay.

22   MR. P. MORRISSEY:  -- stainless steel.

23   THE COURT:  Okay.  And so now we're at the -- I

24   just -- I don't want to get ahead of my understanding of the

25   case.  So you're -- you have a fact of -- someone saying

1    there's a drawing that shows the benches should be there.  We

2    have the -- I presume the known fact that the benches are not

3    there, and I think we're getting some clarification further

4    from what we've just done to show that they're not there.

5    Why do you need the drawings themselves?

6              MR. T. MORRISSEY:  Well, because I think the

7    drawings will explicitly show where the benches were supposed

8    to be positioned along with the other handicapped accessible

9    requirements, the handrails and the lower faucet, et cetera,

10   to provide a complete picture of what they did or didn't do

11   after opening this facility.

12             THE COURT:  That didn't really answer my question.

13   Do you remember what my question was?

14             MR. T. MORRISSEY:  Yeah.  I think the question was

15   what -- why do we additionally need the drawing --

16             THE COURT:  Right.

17             MR. T. MORRISSEY:  -- since they've admitted that

18   they should have been put in.

19             THE COURT:  I mean, you're telling me what the

20   drawings will do for you --

21             MR. T. MORRISSEY:  Yeah.  I just think --

22             THE COURT:  -- which I appreciate but --

23             MR. T. MORRISSEY:  -- I think it's important for

24   the complete --

25             THE COURT:  -- why do you need those for where we

1  are?

2        MR. T. MORRISSEY:  -- picture of the -- what was

3  originally intended and --

4        THE COURT:  So if they can't find them, tell me

5  where that leaves you.

6        MR. T. MORRISSEY:  Well, if they gave us a

7  declaration that they didn't exist, then --

8        THE COURT:  And we've got that coming up --

9        MR. T. MORRISSEY:  Okay.

10        THE COURT:  -- so I suppose if that's where you

11  are --

12        MR. T. MORRISSEY:  Right.

13        THE COURT:  -- that you think --

14        MR. T. MORRISSEY:  If it doesn't exist, it doesn't

15  exist but --

16        THE COURT:  Okay.  So let's go through -- so B --

17        MR. ROBINSON:  Could I be heard on that --

18        THE COURT:  Yeah.

19        MR. ROBINSON:  -- very briefly, Judge?

20        THE COURT:  Sure, sure.

21        MR. ROBINSON:  We did -- so the architect -- so we

22  sent one supplemental print and then the arch -- you know, I

23  explained.  You know, Mr. Morrissey said these were

24  insufficient and then the architect was able to show me,

25  well, this is where it shows the shower head is at five feet.

1    And one thing we discussed before court started, your Honor,

2    is that I may disclose the entire -- all the plumbing

3    schedules.  I'm just -- I apologize.  I just --

4                THE COURT:  When you're saying --

5                MR. ROBINSON:  I don't know how fast Cavco -- I'm

6    sorry.  That's the printing company.  I don't know how fast

7    that would work.

8                THE COURT:  So when you say "plumbing schedules,"

9    those are -- at least in my experience, schedules are

10   different from drawings but maybe that term has been used

11   differently.

12               MR. ROBINSON:  Right.  And I may be -- I may be

13   misspeaking if it's plumbing pictures or -- Mr. Morrissey has

14   a little bit more --

15               THE COURT:  Vacuum.

16               MR. ROBINSON:  -- background knowledge on that.

17   Again, I apologize (unintelligible) for getting lost in the

18   phone, telephone between myself, the engineer and Mr.

19   Morrissey.  I --

20               MR. T. MORRISSEY:  We're looking for -- perhaps I

21   misspoke.  We're looking for the plumbing drawings.

22               THE COURT:  I understand.

23               MR. T. MORRISSEY:  Usually the schedule is to put

24   in a Kohler fixture --

25               THE COURT:  Right.

1    MR. T. MORRISSEY:  -- and that's probably an

2    attachment to the plumbing drawings.  But whatever they have,

3    you know, we'd like to take a better --

4         THE COURT:  All right.  I think -- I think we

5    should take this up in connection with C, D, and E.  So C is

6    "Court ordered production of reports from John Howard and the

7    American Correctional Association.  No responsive documents

8    have been turned over nor a certification that no documents

9    exist."  Same for production of documents related to

10   Pinckneyville shower curbs and hoses.  And same for ESI.  So

11   let's leave ESI for a second.  But C and D seem to track the

12   same as B, which is there's this thing they're looking for.

13   If you can't find them, you can't find them.

14        MR. ROBINSON:  And not to interrupt, but it's my

15   understanding, Michael, that certification was sent either

16   late last night or early this morning on C and D.

17        MR. P. MORRISSEY:  That's right, your Honor.

18        THE COURT:  On C and D.

19        MR. P. MORRISSEY:  So that -- we received it so

20   we're --

21        THE COURT:  Okay.  So you --

22        MR. P. MORRISSEY:  We've resolved it.

23        THE COURT:  Okay.  And that was certification "we

24   can't find anything"?

25        MR. P. MORRISSEY:  Correct.

1    THE COURT:  Okay.  So I think we should just do the

2    same for B.  I appreciate what you're saying, Mr. Morrissey.

3    I just -- a declaration saying that there is -- we can't find

4    it is going to have to suffice.

5    MR. T. MORRISSEY:  That's fine, your Honor.

6    THE COURT:  I'll give you until 8-14, Mr. Robinson,

7    to either find it or say you can't find it.  So that's the

8    architectural drawings for the shower rooms.

9    Okay.  And then ESI, what's going on with that?

10    MR. ROBINSON:  So I'll let Mike speak to that.

11    MR. NORTON:  So we have received all of the ESI

12    results and it is more voluminous than I was anticipating.

13    It's close to 6,000 pages.  I've had it for a couple of days

14    since it's been converted into a producible redactable format

15    with Bates stamping.  It's going to take a little time to go

16    through this.

17    We've had additional -- or I've had additional

18    concerns with respect to the HIPAA information and the

19    confidentiality of some of the information where a lot of the

20    results seemed to be medical records of people that are not

21    the plaintiff as well as medical information housed within

22    grievances where individual inmates are disclosing their

23    specific medical ailments, things along those lines.  The

24    redactions are going to take some time.  I estimate it at one

25    to two minutes per page that it will probably take.

1      THE COURT:  12,000 minutes.

2      MR. NORTON:  Yeah.  So like 95 up to 180 hours

3  thereabouts.  We're putting more people on it.  We have some

4  law clerks that we're going to start bringing on to this

5  project but it's going to take a little time.

6      MR. ROBINSON:  And if I may, Judge.  I don't

7  know if -- sorry, your Honor.  I don't know if this is a way

8  to resolve this, but the HIPAA is very particular in that

9  there's a Paragraph 3 or 4, I think, that particularly states

10  this is about plaintiff Craig only.  Counsel, I don't know if

11  you did -- that tracks your recollection of it.

12      I have in other cases had seen -- have seen HIPAA

13  orders that account for other individuals.  I've also seen

14  some case law that a form HIPAA order could protect

15  nonparties but in this -- in this particular HIPAA, I believe

16  it's four or five.  So there's a paragraph in there, Judge,

17  that's very specific as to this is for Mr. Craig only.

18      MR. P. MORRISSEY:  So I think --

19      MR. ROBINSON:  So I don't know if a different HIPAA

20  or an amended HIPAA is a workaround or not but I wanted to

21  throw it out to the group for consideration.

22      THE COURT:  Mr. Morrissey?

23      MR. T. MORRISSEY:  Well, if they wanted to send us

24  a draft of an amended HIPAA, we certainly would look at it

25  and obviously it's a class action.  You know, it's only going

1    to be used for this case.

2           THE COURT:  Yeah.  I'm not sure how that fits

3    within, you know, class members and their HIPAA rights are

4    different from your named plaintiff; right.  That's why named

5    plaintiffs get paid more money, correct?

6           MR. T. MORRISSEY:  Well, they --

7           THE COURT:  One of the reasons.

8           MR. T. MORRISSEY:  One, yeah.  But --

9           THE COURT:  Yeah.

10          MR. T. MORRISSEY:  -- but if there's documents that

11   are a part of these ESI that deal with notice to the IDOC

12   about the showers, then I think we --

13          THE COURT:  Yeah.  I don't know if --

14          MR. T. MORRISSEY:  It could be for attorneys' eyes

15   only and --

16          THE COURT:  Well, I'm going to leave you all to

17   figure this out.  I don't know that attorneys' eyes only

18   might -- would meet the needs or duties under HIPAA.  I don't

19   know that.  Redaction certainly would so -- and you're

20   looking for notice issues.  That's why this ESI is relevant,

21   correct?

22          MR. P. MORRISSEY:  Right, and notice and any

23   plaintiffs to make future renovations to these areas.

24          THE COURT:  Yeah.  You don't need the underlying

25   medical information as far as notice?

1    MR. P. MORRISSEY:  No.

2    THE COURT:  So if someone says that, you know, I've

3    got this medical issue, therefore I need a bench and there

4    are no benches here, you don't need to know the medical

5    issue.  You're just saying I need a bench and there are no

6    benches here.

7    MR. T. MORRISSEY:  Right.

8    THE COURT:  Okay.  Well, I'm going to give you a

9    hard date.  It's to get the ESI produced.  It's all subject

10   to -- if there's something in there that the Morrisseys come

11   back and say we need to do more discovery because of, there

12   will be one-sided discovery.  In other words, if I reopen

13   discovery, I'm not -- it's not going to be reopened for

14   defendants as well.  It's going to be reopened limited to

15   this ESI production because I'm not moving that date.  Does

16   everyone track that issue?  You cannot get this done by

17   August 30th.  Is that what I'm hearing?

18   MR. ROBINSON:  I suspect it will be done by August

19   30th --

20   THE COURT:  Okay.  But right near August 30th?

21   MR. ROBINSON:  Could be.

22   THE COURT:  Okay.  Here, you won't disappoint me.

23   September 13th, ESI redacted in whatever format you all

24   agreed to -- I'm not going to get involved in that unless you

25   ask me to -- but you understand what they're looking for.

1    They're looking for notice.  So whether someone has, you

2    know, temporary paralysis due to a medical condition or a

3    permanent paralysis due to an injury, they're not really

4    caring much about that.  They're caring about the

5    inability -- notice that there are not ADA-compliant benches

6    in these showers.  That's what they're worried about.

7              UNIDENTIFIED MALE SPEAKER:  Notice to the IDOC

8    of non --

9              THE COURT:  Yeah, people complaining saying I --

10   you know, I'm wheelchair-bound or temporarily

11   wheelchair-bound or, you know, I've got -- I'm -- I'm unable

12   to stand in a shower but I'm not wheelchair-bound but I can't

13   take a shower because there's no bench.

14             UNIDENTIFIED MALE SPEAKER:  Sure.

15             THE COURT:  So what I'm hearing from Mr. and

16   Mr. Morrissey is I don't need to know the underlying medical

17   reason.  I need to know the notice if -- that IDOC was aware

18   of this problem so --

19             MR. ROBINSON:  I understand.

20             THE COURT:  -- I'll give you September 13th.

21             MR. P. MORRISSEY:  And, your Honor, before coming

22   to court today, defendants said that they were hoping to

23   produce some of this ESI and they said there were about six

24   or 700 pages.  So perhaps on a rolling --

25             THE COURT:  Well, they just told me 6,000 pages.

1          MR. P. MORRISSEY:  This is the first time I've

2     heard about 6,000.  They told me --

3          THE COURT:  Did you hear 6,000, though, or did I

4     write it down wrong?

5          MR. P. MORRISSEY:  I heard 6,000 today --

6          THE COURT:  Okay.

7          MR. P. MORRISSEY:  -- but in prior conferrals, it

8     was about six or 700 pages that they have ready.  They were

9     in the process of Bates stamping.  So rather than waiting --

10          THE COURT:  Both can be true.  So ESI has to be

11     done by September 13th.  Defendants are ordered to engage in

12     rolling production.

13          MR. ROBINSON:  Yes.

14          THE COURT:  Okay.  As far as any further discovery

15     that may flow from that, what I said before stands.  So if it

16     comes to pass that there are things in those records that the

17     Morrisseys are like "if I had known that, I would have done

18     this," we may have to reopen discovery but it will be limited

19     to that on both sides.

20          I can't -- you don't get -- and by the way,

21     defendants don't get to reopen discovery saying "well, if we

22     had known this, we would have done this."  That doesn't work

23     because it's your documents.  Do you understand that?

24          MR. ROBINSON:  I do.

25          THE COURT:  Okay.  I interrupted someone on this

1    side.

2            MR. T. MORRISSEY:  I presume these emails are

3    internal between -- in the IDOC.  They're not emails coming

4    from the inmates.  They're -- they obviously aren't emailing.

5            UNIDENTIFIED MALE SPEAKER:  There are

6    communication --

7            THE COURT:  You all can talk about all that.  I've

8    got a --

9            UNIDENTIFIED MALE SPEAKER:  Okay.  Sure.

10           THE COURT:  I'm in the middle of a settlement

11   conference.

12           MR. ROBINSON:  So, Judge, this might be a -- and I

13   got to ask and make my record.

14           THE COURT:  Sure.

15           MR. ROBINSON:  We are anticipating filing a motion

16   for extension of time contemplating the end of October to

17   give myself, Mr. Norton, and Ms. Crawford time to wrap our

18   arms around this case.

19           THE COURT:  File a written motion and you can argue

20   it, but I'm not going to rule on an oral motion.

21           MR. ROBINSON:  I -- I understand, Judge.  I just --

22   I didn't want to blindside your Honor.

23           THE COURT:  Yeah.  It's fine.  This case is -- you

24   know --

25           MR. ROBINSON:  Yeah.  No.  I understand, your

1   Honor.  Thank you, Judge.

2               THE COURT:  But I'm -- my comment is not denying a

3   motion.

4               MR. ROBINSON:  Right.

5               THE COURT:  You can file your motion.

6               MR. ROBINSON:  Thank you, your Honor.

7               THE COURT:  Okay.  Okay.  So I'm on number four,

8   Page 3.  I think this is resolved now.  Am I right?

9               MR. P. MORRISSEY:  It's resolved except to the

10  extent that they're planning to install benches in many of

11  these facilities.  And so the 30(b)(6), one of the topics is

12  "are you planning on doing this in the future" because that's

13  a significant issue for the class.

14              THE COURT:  Okay.  So tell me how that's relevant.

15              MR. P. MORRISSEY:  It's relevant, your Honor,

16  because the class continues to expand until this issue with

17  the showers is remedied.

18              THE COURT:  Oh.

19              MR. P. MORRISSEY:  So it's relevant to resolution

20  of the case and --

21              THE COURT:  All right.  So tell me why you want

22  discovery on that.

23              MR. P. MORRISSEY:  Well, because --

24              THE COURT:  I mean, when it gets -- when it gets

25  done, I understand that.

1    MR. P. MORRISSEY:  The issue is whether there's any

2    plans at the moment to remedy this, whether they've consulted

3    with an architect to bring the NRC --

4    THE COURT:  Well, that's different.  Why is that

5    relevant?

6    MR. P. MORRISSEY:  It's relevant because -- because

7    the class continues to grow, your Honor, until -- until this

8    issue is remedied, that the showers are in violation until --

9    in our opinion, until there's corrective action.

10    THE COURT:  But why -- okay.

11    MR. P. MORRISSEY:  And it became --

12    THE COURT:  I don't mean to interrupt you but when

13    that happens, that happens.

14    MR. P. MORRISSEY:  Right.

15    THE COURT:  Plans and dreams and hopes are all

16    great but I think this case is a good example that it doesn't

17    matter until it gets done; right.  You agree with that.

18    MR. P. MORRISSEY:  Right.

19    THE COURT:  So why would discovery on their plans

20    to get it done matter?

21    MR. P. MORRISSEY:  Well, because Superintendent

22    Hunter said that there's projects to make corrections and

23    they were in the process of doing it.  Now --

24    THE COURT:  And now that's -- they're saying it's

25    not so I'm -- I'm just trying to understand why that matters,

1    why we would worry about that.

2                    MR. P. MORRISSEY:  Well, we'll withdraw that, your

3    Honor.

4                    THE COURT:  Okay.  All right.  I think our next

5    step is to have -- set another -- well, I think in fairness

6    to new defense counsel, the settlement issue I think we got

7    to take up but maybe now is not the right time.

8                    Do we want to come back in here mid August or do we

9    want to come in here after August 30th?

10                   MR. T. MORRISSEY:  My preference would be like in

11   about two weeks, three weeks.

12                   THE COURT:  Three weeks I can do.  Two weeks I

13   cannot.

14                   Mr. Robinson, what do you think about that?

15                   MR. ROBINSON:  So I know we have 30(b)(6) deps on

16   8-19; right.  So I guess my question will be do we want to

17   come in before those deps, after those deps?

18                   MR. T. MORRISSEY:  I think after.

19                   THE COURT:  Okay.  8-26.  9:15.  Does that work?

20                   MR. T. MORRISSEY:  That's fine for plaintiffs, your

21   Honor.

22                   THE COURT:  Mr. Robinson, Mr. Norton?

23                   UNIDENTIFIED MALE SPEAKER:  We will make that work,

24   Judge.

25                   THE COURT:  Great.  Can you file a status report

1    the twenty -- the close of business the 22nd?  Just give me

2    your list and tell me where things are.  The most -- I won't

3    say most important but, Mr. Robinson, if there's an interest

4    in settlement, maybe put that in there then because I think

5    the next thing we're going to be doing after we get the CSI

6    cleaned up is expert discovery, correct?

7                MR. T. MORRISSEY:  We've already had our expert

8    examine both --

9                THE COURT:  Okay.

10               MR. T. MORRISSEY:  -- facilities.  I don't know

11   if --

12               MR. ROBINSON:  That's something we're --

13               THE COURT:  I'm talking about reports, depositions,

14   all that stuff.

15               MR. T. MORRISSEY:  Right, right.

16               THE COURT:  Okay.  So a good time to talk about

17   settlement.

18               UNIDENTIFIED MALE SPEAKER:  I agree.

19               THE COURT:  Okay.

20               UNIDENTIFIED MALE SPEAKER:  It's just -- as I'm

21   sure your Honor under -- you know, if this were just dollars

22   and cents, but does the (unintelligible) need to get

23   involved.  I don't know if your Honor is keeping all this

24   drama with closing Stateville and everything that's involved

25   there so --

1    THE COURT:  I know a lot is going on so -- let's

2  get here on the 26th, see where we are and then we'll --

3  August 30th stands as our close of fact discovery.  We have

4  this ESI window so I've given you a little extra time to get

5  that done and then we'll see where we are.

6    Anything else I can do for plaintiffs?

7    MR. T. MORRISSEY:  No, your Honor.  Thanks for your

8  time.

9    THE COURT:  Sure.

10    Anything else for defendant?

11    UNIDENTIFIED MALE SPEAKER:  No.  Thank you, Judge.

12    UNIDENTIFIED MALE SPEAKER:  No, your Honor.

13    THE COURT:  All right.  Thanks so much.

14    (Proceedings concluded at 2:12:35 p.m.)

15

16    C E R T I F I C A T E

17    I hereby certify that the foregoing is a transcription

18  of proceedings transcribed from digital proceedings held

19  before Magistrate Judge M. David Weisman on August 7, 2024.

20

21  /s/Laura LaCien                          August 12, 2024
    _____                      Date
22  Laura LaCien
    Official Court Reporter
23

24

25