IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLORENCIO CRAIG,<br><br>    Plaintiff,<br><br>  v.<br><br>LATOYA HUGHES, Acting Director of the Illinois Department of Corrections,<br><br>    Defendant. | Case No. 23 cv 02993<br><br>Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

  Plaintiff Florencio Craig, a former inmate at the Northern Reception and Classification Center (NRC) and Pinckneyville Correctional Center has brought this class action lawsuit on behalf of himself and two classes under Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a),[1] and the Illinois Civil Rights Remedies Restoration Act (Restoration Act), 775 ILCS 60/1 *et seq*.[2] Plaintiff is a paraplegic wheelchair user and alleges that he and other wheelchair users were denied access to showers on the same basis as nondisabled individuals at the NRC and Pinckneyville. Before the Court are various motions and cross-motions for summary judgment brought by the parties. However, the Court finds that it must modify the certified issues first before permitting this case to proceed to summary judgment, and that the parties should have notice and an opportunity to

---

[1] For ease of reference, the Court will refer only to the standards under the "ADA," which should be understood to include both the applicable law under the ADA and the Rehabilitation Act because "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds," which is not in dispute here. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

[2] Plaintiff supplemented his complaint with the Restoration Act claim after the Court granted Plaintiff's motion for class certification. *See* [95]. In his summary judgment briefing, Plaintiff stated he does not assert a Restoration Act claim on an individual basis.

brief summary judgment on the amended certified issues before any decision. Accordingly, for the reasons stated below, Plaintiff's motion for summary judgment [139] and Defendant's motion for summary judgment [157] are stricken without prejudice and the Court will give the parties an opportunity to refile their briefs addressing the amended certified issues.

## Background

The following facts are undisputed unless otherwise indicated based on the parties' filings. Plaintiff has been a wheelchair user since 2005 due to paraplegia. DRPSOF ¶ 1. In March 2022, Plaintiff was sentenced to three years in the Illinois Department of Corrections (IDOC). *Id.*

### I. NRC Facts

Construction of the NRC began in August of 1999, and the IDOC website represents that the facility opened in 2004. *Id.* ¶ 9. From March 9, 2022, to March 31, 2022, Plaintiff was housed at the NRC. *Id.* ¶ 6. From March 9 to March 24, he was assigned to Living Unit D, Cell 105, and from March 24 to March 31, he was assigned to Living Unit G, Cell 103. *Id.* The NRC consists of 24 wings to house individuals, and on the first floor of each wing, there are two shower stalls. *Id.* ¶ 10. The shower rooms on the first floor at the NRC have identical measurements – 48 inches along the back wall, and one side wall measures 35 ½ inches while the other side wall is 31 ½ inches. *Id.* ¶ 11. There are no mounted seats in any of the NRC shower stalls, and none of the showers are designed for a wheelchair user to roll into the shower. *Id.* ¶¶ 10, 15. Each shower has a "lip" or "curb" that measures ½ inch. *Id.* ¶ 11. As of September 25, 2023, grab bars were only located in seven showers in units A, B, F, G, H, I, and J. *Id.* ¶ 12.

While at NRC, Plaintiff was provided a "plastic lawn chair" to use in the shower. *Id.* ¶ 32. According to Plaintiff, he had difficulty getting into and staying on the chair as well as maneuvering, sitting, and washing while in the chair. *Id.* When Plaintiff was housed in Living

Unit D, the showers did not have grab bars. *Id.* ¶ 34. Plaintiff submitted a grievance, dated March 17, 2022, complaining about the lack of grab bars, the plastic lawn chair he was provided to shower, and that the shower rooms were not "handicap accessible." *Id.* IDOC stamped the grievance as received on March 28, 2022. *Id.* Plaintiff submitted another grievance regarding the NRC showers, but after he was transferred to Pinckneyville. *Id.* ¶ 35.[3] Also, when Plaintiff was transferred to Living Unit G, he fell in the presence of an officer while attempting to transfer to a chair "placed halfway out of the shower." *Id.* ¶ 37.[4]

## II. Pinckneyville Facts

Plaintiff was transferred to Pinckneyville on March 31, 2022, and was housed there until August 5, 2022. *Id.* ¶ 42. Plaintiff completed an "Individual in Custody Request" at Pinckneyville on March 31, 2022, stating, "I would like to be given ADA showers & I need a urinal I am paralyzed," and a medical record generated the following day states that Plaintiff is a "paraplegic in w/c" and "need[s] an order for an ADA shower." DRPSOAF ¶ 12.[5] From March 31, 2022, to April 4, 2022, he was housed in Building 6. DRPSOF ¶ 42. From April 4, 2022, to June 22, 2022, he was assigned to Building 4, Wing B. *Id.* From June 22, 2022, to August 5, 2022, he was assigned to Building 3, Wing C. *Id.* Pinckneyville opened in 1998. *Id.* ¶ 43. The general population showers in housing units 1 to 6 at Pinckneyville are all larger than 30 inches by 60 inches. *Id.* ¶ 46. While the architectural drawings for Pinckneyville depict folding security shower

---

[3] Plaintiff did not indicate when this grievance was submitted. Defendant notes that the second grievance is dated April 12, 2022, and identifies Plaintiff's "Present Facility" as Pinckneyville. The Court has reviewed the grievance and concludes that it is dated after Plaintiff was transferred to Pinckneyville.

[4] Defendant disputes the extent of Plaintiff's injuries and notes that there is no documentation of any encounter with the Health Care Unit, but Defendant does not appear to dispute that Plaintiff fell in the presence of an officer. Thus, the Court deems this fact admitted.

[5] Defendant objects that this fact is "immaterial" because Plaintiff had a permit for an ADA shower and cell at Pinckneyville but otherwise does not dispute it. The Court finds that this fact is material and deems it admitted.

seats for certain showers in housing units 1 to 4, the only mounted folding shower seat presently at Pinckneyville is located in the Health Care Unit. *Id.* ¶¶ 50, 52. Every shower room on the first floor of buildings 1 through 5 at Pinckneyville has a curb that measures at least ½ inch, with some as high as 1 ½ inches from the finished floor. DRPSOAF ¶ 7.[6]

Approximately five years ago, the Pinckneyville Health Care Unit Administrator, who has also served as the facility's ADA coordinator, requested that maintenance measure the curb or lip to enter the showers in buildings 1 through 5. DRPSOF ¶ 53. She then "look[ed] it up in the book" and "Googled" and concluded it was within ADA limits. *Id.* On September 13, 2018, that same administrator executed a declaration acknowledging complaints from wheelchair users at Pinckneyville about showering and that she was "working with the Warden and Assistant Warden of Pinckneyville to develop a plan to ensure that wheelchair bound inmates are able to shower safely and securely in general population." *Id.* ¶ 54.

Plaintiff was provided a chair at Pinckneyville to shower, a photo of which was filed under seal. *Id.* ¶ 58. Plaintiff testified that in order to shower, he would either ask an inmate worker to hold the chair for him or he would prop it up against the wall. *Id.* ¶ 59. Plaintiff fell more times while using the Pinckneyville showers compared to the NRC showers, and "inmates were there to help" following his falls. *Id.* ¶ 62.

---

[6] Defendant objects to this fact as immaterial because "Plaintiff's complaint relates only to mounted shower seats." The Court overrules the objection, having found, as described below, that the complaint relates to other "structural barriers" in addition to the lack of mounted shower seats. Defendant also objects that this fact is immaterial because Plaintiff's expert, who took the measurements, did not make a determination whether the curbs impact wheelchair accessibility or whether they are "beveled, rounded, inclined, or otherwise modified to allow a wheelchair user to pass over them." Subject to these objections, Defendant does not dispute this fact. Because Defendant does not dispute the measurements, nor contest that curbs exist, the Court deems the fact of the curb measurements as admitted.

**Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. The standards for summary judgment remain the same when addressing cross-motions for summary judgment: the Court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

**Discussion**

I. **Whether the Complaint Alleges Structural Barriers Other Than a Lack of Mounted Seats**

Prior to addressing the merits of the parties' motions for summary judgment, the Court must first address whether the complaint sufficiently alleges issues other than the lack of mounted shower seats in the NRC and Pinckneyville showers. In his summary judgment briefing, Plaintiff argues that the NRC general population showers fail to comply with the structural standards of the ADA due to their dimensions, lack of mounted seats, and lack of grab bars. [140] at 6. Plaintiff also contends that the Pinckneyville showers in the general population housing units violate ADA standards due to the presence of curbs. *Id.* at 7. Plaintiff further argues that "[t]he policy of offering a portable chair at NRC and Pinckneyville upon request did not satisfy defendant's obligations under the ADA." *Id.* at 8.

5

Defendant responds that "Plaintiff does not state a claim for violation of the standards relating to the dimensions of the showers at NRC" because the complaint "states facts or claims only in relation to mounted shower seats." [173] at 2. Defendant similarly argues that Plaintiff "has not alleged that the showers at Pinckneyville were inaccessible because of anything except for the absence of a mounted seat." *Id.* at 4. Defendant contends that Plaintiff is impermissibly attempting to expand or amend his complaint on a motion for summary judgment and "had ample notice of the insufficiency of his complaint and ample opportunity to amend." *Id.*[7]

Under the federal notice-pleading standard, a complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). "To state a claim under Title II of the ADA, [a plaintiff] needed only to plead facts suggesting that he is a 'qualified individual with a disability' who 'by reason of such disability' was 'denied the benefits of the services, programs, or activities of a public entity.'" *Brown v. Meisner*, 81 F.4th 706, 708 (7th Cir. 2023) (quoting 42 U.S.C. § 12132).

The Court acknowledges that the complaint calls out the lack of shower seats specifically. The Court finds, however, that the complaint has sufficient allegations to put Defendant on notice that Plaintiff's claims relate to other aspects of the showers that allegedly violate the ADA. In addition to the specific allegations about the lack of shower seats, the complaint alleges that "Plaintiff fell and suffered physical injuries while showering *because of the obvious barriers* presented in the NRC shower room[;]" that "[t]he *inaccessible conditions* deprived plaintiff the ability to shower on the same basis as non-disabled detainees at NRC[;]" and that "Plaintiff and similarly situated detainees experience *the same barriers* showering at Pinckneyville; none of the

---

[7] Defendant has also objected to many of the assertions in Plaintiff's Local Rule 56.1(a)(2) statement as "irrelevant or immaterial" to Plaintiff's motion for summary judgment "because they concern lips or humps and Plaintiff's complaint solely concerns mounted seats." [159] at 1 n.2.

6

showers have mounted benches as required by the Rehabilitation Act and ADA. Plaintiff was unable to shower on the same basis as non-disabled detainees because of *the obvious structural barriers*." [1] ¶¶ 12, 13, 15 (emphasis added).

While Plaintiff could have been clearer as to what the additional "structural barriers" were (to the extent he knew at the time of filing his complaint),[8] he has pled sufficient facts to put Defendant on notice that his claim relates to ADA violations of the showers at NRC and Pinckneyville due to both the lack of mounted shower seats and other structural barriers. *See Walker v. Dart*, 2020 WL 7480704, at *4 (N.D. Ill. Dec. 18, 2020) (finding complaint alleging issues with showers and a ramp at correctional facility, with similar allegations about "structural barriers" and the lack of a fixed bench, provided defendants with notice of plaintiff's claims under Rule 10(b) despite not having separate counts).

Further, even if the complaint did not put Defendant on adequate notice, Plaintiff was not required to make a formal amendment to the complaint. The Federal Rules of Civil Procedure "do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process. The information is to be reflected in the framing of issues in the pretrial order, which supersedes the complaint." *Ash v. Wallenmeyer*, 879 F.2d 272, 274 (7th Cir. 1989); *see also Umar v. Johnson*, 173 F.R.D. 494, 503 (N.D. Ill. 1997) ("Indeed, nothing in federal procedure compels a plaintiff to amend the complaint as discovery unfolds.").

Defendant argues that "Plaintiff's counsel made plain that they only sought to make the case at Pinckneyville about the shower curbs at the close of discovery[.]" [159] at 15 n.7. However, the record and case docket indicate that issues related to grab bars, curbs, and shower

---

[8] At a hearing on November 19, 2024, counsel for Plaintiff represented that they discovered the curbs in the Pinckneyville showers through discovery. [149] at 14:2–9. At the hearing on the motions for summary judgment on June 10, 2025, counsel for Plaintiff represented that they were unaware of the dimensions of the NRC showers until they brought their architect to measure the showers during the discovery process.

dimensions were explored by both parties during the discovery process. For example, a review of the docket indicates that Defendant was put on notice that the issue of grab bars and dimensions of the showers in NRC was part of Plaintiff's case by at least September 2023. [141-10]. A minute entry related to a status hearing before the magistrate judge in this case on July 9, 2024, reflects that Defendants were ordered to respond to Plaintiff's requests for production related to "curbs in the shower" by August 5, 2024. [92]. The docket and record also reflect that in March 2025, Plaintiff's expert examined the curbs at Pinckneyville during an inspection of the facility and prepared a declaration reflecting the same dated April 1, 2025. [165-5]. Thus, to the extent Plaintiff should have amended his complaint, such an error would be harmless because Defendant has known since discovery that shower dimensions, grab bars, and curbs were part of Plaintiff's case. *See Ash*, 879 F.2d at 274–75.

## II. Motions for Summary Judgment Regarding the Certified Class Issues

On June 20, 2024, this Court granted Plaintiff's motion for class certification. *See* [85]. The Court certified the following two classes:

> (1) all individuals assigned to NRC from May 12, 2021 to the date of entry of judgment who were prescribed a wheelchair by a prison medical provider; and
>
> (2) all individuals assigned to Pinckneyville from May 12, 2021 to the date of entry of judgment who were prescribed a wheelchair by a prison medical provider.

*Id.* at 5. Pursuant to Rule 23(c)(4), the Court also certified the following issues, identified by Plaintiff in his motion for class certification:

> (1) whether the ADA standards apply to the showers at NRC and Pinckneyville; and
>
> (2) whether the standards were violated due to lack of mounted seats at both facilities.

*Id.* The NRC plaintiff class has moved for summary judgment on the two certified issues. Defendant has cross-moved for summary judgment on the two certified issues as to both the NRC class and the Pinckneyville class. The Pinckneyville plaintiff class did not move for summary judgment.

To prevail under the ADA, a plaintiff must show "that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). Showers provided to inmates are a "program or activity" under the ADA. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). The Seventh Circuit has recognized that "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services. To remedy this form of discrimination, the DOJ has adopted structural accessibility standards that apply to newly constructed or altered facilities subject to Titles II and III." *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). If a facility complies with the structural accessibility standards, a defendant has "satisfied their obligation to provide reasonable access and cannot be said to have 'denied access' to programs or services." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) (citing 28 C.F.R. § 35.151(c)(1)). The ADA also permits "[d]epartures from particular requirements" of the federal accessibility standards "by use of other methods . . . when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1). The class issues certified in this case relate to the denial of the benefits of the services, programs, or activities of a public entity – namely, whether wheelchair users at NRC and

9

Pinckneyville were denied access to showers on the same basis as non-disabled detainees because IDOC purportedly provided non-ADA-compliant showers at both facilities.

Both parties agree that the 1991 ADA standards apply to the NRC. The NRC plaintiff class argues that it is entitled to summary judgment because the NRC showers are not 36 inches by 36 inches and do not have mounted seats, so they do not comply with the ADA structural standards. Defendant does not dispute that the dimensions of the NRC showers are not 36 inches by 36 inches. However, Defendant argues that the 1991 ADA standards only require mounted seats for showers that are 36 inches by 36 inches. Put differently, Defendant argues that because the NRC showers are not of the dimensions contemplated by the ADA, it cannot be said that the ADA standards require mounted shower seats in those showers. Thus, according to Defendant, because the showers are not of the dimension for which mounted seats are required, Defendant is entitled to summary judgment on the class issue of "whether the standards were violated *due to lack of mounted seats at both facilities*."

The Court agrees with Defendant's reading of the 1991 ADA standards. The standards state that a shower must be one of two sizes – 36 by 36 inches (referred to as a "transfer-type" shower) or at least 30 inches by 60 inches (referred to as a "roll-in" shower). [140-1] § 4.21.2. The standards state that "[a] seat shall be provided in shower stalls 36 in by 36 in … The seat shall be mounted 17 in to 19 in (430 mm to 485 mm) from the bathroom floor and shall extend the full depth of the stall." *Id.* § 4.21.3. Further, "[w]here a fixed seat is provided in a 30 in by 60 in minimum (760 mm by 1525 mm) shower stall, it shall be a folding type and shall be mounted on the wall[.]" *Id.* Under the plain text, the requirements of a particular shower are prompted by its dimensions, not whether it is colloquially considered a "transfer-type" or "roll-in shower."

Thus, the answer to the narrow issue that was certified is that the NRC showers do not violate the ADA standards *due to the lack of mounted seats.* That is not to say the showers comply with the ADA. The dimensions of the NRC showers clearly do not comply with the standards. The issue here is the narrow language of the certified issue, which frankly is no longer the correct issue to certify. The Court is left with a conundrum – on the one hand, the NRC showers do not violate ADA standards simply because they lack mounted seats, but this is because, on the other hand, they aren't of the dimensions that trigger the seat requirement. At oral argument on the motions for summary judgment, Plaintiff disagreed with Defendant's argument, but also requested the Court to modify its prior order on class certification pursuant to the Seventh Circuit's decision in *Fonder v. Sheriff of Kankakee Cnty.*, 823 F.3d 1144 (7th Cir. 2016). The Court agrees and finds that modifying the certified issues are warranted due to developments that occurred during the discovery process, and after the filing of the class certification motion, and is in the interest of judicial economy.

In *Fonder*, the Seventh Circuit recognized that under Rule 23, "[c]lasses are certified early in a suit" and "[a]ll certifications are tentative." 823 F.3d at 1147 (citing Fed. R. Civ. P. 23(c)(1)(A) and 23(c)(1)(C)). The Seventh Circuit went on to advise:

> If the evidence calls into question the propriety of defining a class in a particular way, then the definition must be modified or subclasses certified. A class defined early in a suit cannot justify adjudicating hypothetical issues rather than determining the legality of what actually happens. The class definition must yield to the facts, rather than the other way 'round.

*Id.*; *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d

11

890, 896 (7th Cir. 1981) ("If the certification of the class is later deemed to be improvident, the court may decertify, subclassify, alter the certification, or permit intervention.") (cleaned up).

Here, Plaintiff filed his complaint on May 12, 2023 [1] and moved for class certification on June 22, 2023. [10]. When the motion was filed, discovery had not yet been completed. It was only after filing the motion for class certification and during discovery that class counsel inspected both the NRC and Pinckneyville with an architect. As noted above, class counsel has represented that they were unaware of the dimensions of the NRC showers until after discovery began, which is why they proposed the much narrower issue in their class certification motion. The same is also true for the class issue for Pinckneyville. Counsel for Plaintiff represented to this Court that it was only through discovery that they discovered the curbs in the Pinckneyville showers. [149] at 14:2–9. Similarly, Plaintiff discovered that Pinckneyville possibly had mounted shower seats that were removed sometime after construction during discovery. This is the type of scenario contemplated by the Seventh Circuit in *Fonder*. *See* 823 F.3d at 1147 (suggesting it was wrong for the district judge to imply that the class had "waived or forfeited the opportunity to contest" how a county sheriff's policy worked in practice when "class counsel had no reason to think that the jail's staff was doing something other than what the written policy requires" when the lawsuit began and the class definition was proposed).

The Court also finds that modifying the certified class issues is within the broad discretion given to district courts under Rule 23. Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Seventh Circuit has stated that under this "broad authority, the district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *Jacks v. DirectSat USA, LLC*,

118 F.4th 888, 895 (7th Cir. 2024) (internal quotation marks and citation omitted). The Seventh Circuit went on to explain that "such an approach makes sense in light of our repeated assertions that district courts have wide discretion in managing class and collective actions. And a previous order granting or denying certification (by the same judge or a prior one) does not limit this discretion in any way." *Id.* (internal quotation marks and citations omitted). The Seventh Circuit has also counseled that when a proposed class definition involves "minor overbreadth problems that do not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 n.15 (7th Cir. 2012). Although the issue here is not one of "overbreadth," the underlying principle remains the same – courts have the discretion to modify or revise class certification orders to address issues that arise during the pendency of the litigation.

Courts have also modified proposed class definitions *sua sponte* in response to motions for class certification. *See e.g.*, *Beaton v. Software*, 2017 WL 4740628, at *3 (N.D. Ill. Oct. 19, 2017), *aff'd sub nom. Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018) ("But nothing prevents this Court from considering a revised definition or, indeed, *sua sponte* revising the definition of a proposed class."); *see also Harden v. Raffensperger, Hughes & Co.*, 933 F. Supp. 763, 769 n.5 (S.D. Ind. 1996) (modifying class certification order *sua sponte*). Based on these cases, and given the broad discretion provided under Rule 23, the Court is satisfied it can modify its prior class certification order, particularly since Plaintiff has now orally moved in the alternative for modification. *See Beaton*, 907 F.3d at 1023 ("District courts may amend class definitions either on motion or on their own initiative.").

When the Court certified the class definitions and issues, it was early in this litigation, and discovery uncovered other structural issues with the showers. *Fonder* counsels that the appropriate course of action is to modify the class issue to address these developments. Thus, the Court will exercise its discretion and modify the certified issues as follows to address developments in the litigation:

> "(1) whether the ADA and Rehabilitation Act standards apply to the showers at NRC and Pinckneyville; and
>
> (2) whether the standards were violated due to structural barriers and lack of mounted seats at both facilities."[9]

The Court is aware that it has an obligation to confirm that the modified issue complies with Rule 23. *See Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 599 (7th Cir. 2021) ("A district court must assure itself at all stages of the litigation that a certified class meets the requirements of Rule 23."). The Court is satisfied that the class issues as modified comply with Rule 23 for the same reasons stated in its original Order [85] granting Plaintiff's motion for class certification. *See id.* ("To be sure, not every adjustment to a class requires a fresh Rule 23 evaluation. In many cases, a modified class may satisfy Rule 23 for the reasons the original class did, and a court may simply say so."). Like the previous version of the certified issues, the main issue of whether the standards were violated due to structural barriers and lack of mounted seats at both facilities "can be resolved on a class-wide basis" since it is "relevant to every detainee in the proposed classes." [85] at 4. Similarly, as this Court previously found, "the merits of the proposed class turn on common questions and proceeding as a class 'achieves economies of time, effort, and expense and promotes

---

[9] By modifying the first certified issue to include the Rehabilitation Act, the Court has modified the issue to align with Plaintiff's motion for class certification and the claims in this case.

uniformity of decision.'" *Id.* (quoting *Bennett v. Dart*, 2020 WL 1812376, at *3 (N.D. Ill. Apr. 9, 2020).

In order to give the parties a fair opportunity to brief the matter now that the class issues have been modified, the Court will strike the current motions for summary judgment and allow the parties time to refile them so that they may reframe any arguments consistent with the modified issue and also raise any additional arguments they wish.

## Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment [139] and Defendant's motion for summary judgment [157] are stricken without prejudice. The parties are instructed to file a joint status report by July 16, 2025, addressing whether supplemental class notice is required and also proposing a schedule for summary judgment briefing in light of the modified class issues.

**SO ORDERED.**

Dated: July 2, 2025

                                                  Sunil R. Harjani
                                                  United States District Judge