IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLORENCIO CRAIG, | |
| Plaintiff, | Case No. 23 cv 2993 |
| v. | Honorable Sunil R. Harjani |
| LATOYA HUGHES, Acting Director of the Illinois Department of Corrections, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Florencio Craig, a former inmate at the Northern Reception and Classification Center (NRC) and Pinckneyville Correctional Center (Pinckneyville), brought this class action lawsuit on behalf of himself and two classes for violations of various federal disability statutes. Plaintiff is a paraplegic wheelchair user and alleges that he and other wheelchair users were denied access to showers on the same basis as nondisabled individuals at NRC and Pinckneyville. Before the Court are the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff's motion for partial summary judgment [184] is granted, and Defendant's motion for summary judgment [190] is denied. Because the showers at NRC and Pinckneyville are not compliant with federal accessibility standards and because Defendant fails to raise a genuine dispute of material fact about whether the Illinois Department of Corrections (IDOC) otherwise provided equivalent access, the NRC and Pinckneyville classes are entitled to summary judgment on the certified issues. Further, because a reasonable jury could find that Defendant was deliberately indifferent to Plaintiff during his incarceration at both facilities, Defendant's motion for summary judgment on Plaintiff's individual claims is denied, and the matter will be set for trial.

### Background

Plaintiff brings this class action on behalf of himself and two classes concerning the showers at NRC and Pinckneyville. Plaintiff alleges claims under Section 202 of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1, *et seq*.[1] On June 20, 2024, this Court granted Plaintiff's motion for class certification. *See* [85]. The Court certified the following two classes:

---

[1] Plaintiff supplemented his complaint with the Restoration Act claim after the Court granted Plaintiff's Motion for Class certification. *See* [95]. As discussed in more detail below, Plaintiff does not assert an individual Restoration Act claim.

1

> (1) all individuals assigned to NRC from May 12, 2021, to the date of entry of judgment who were prescribed a wheelchair by a prison medical provider; and
>
> (2) all individuals assigned to Pinckneyville from May 12, 2021, to the date of entry of judgment who were prescribed a wheelchair by a prison medical provider.[2]

The Court also certified two issues pursuant to Federal Rule of Civil Procedure 23(c)(4). Later, this Court modified the certified issues as follows:

> (1) whether the ADA and Rehabilitation Act standards apply to the showers at NRC and Pinckneyville; and
>
> (2) whether the standards were violated due to structural barriers and lack of mounted seats at both facilities.

*See* [180]. Plaintiff now moves for partial summary judgment on behalf of each class on both certified issues. Defendant cross-moves for summary judgment on these issues as well. Defendant also moves for summary judgment on Plaintiff's individual claims under the ADA, the Rehabilitation Act, and the Illinois Civil Rights Remedies Restoration Act.

## Facts

The following facts are undisputed unless otherwise indicated.[3] Plaintiff has used a wheelchair since 2005 due to paraplegia. DRPSOF ¶ 1. In March 2022, Plaintiff was sentenced to three years in IDOC. *Id.* During this period, he served time at both NRC and Pinckneyville.

### I. The NRC

Construction of the NRC began in August 1999, and the facility opened in 2004. *Id.* ¶ 9. NRC consists of 24 wings to house individuals, and on the first floor of each wing, there are two shower stalls. *Id.* ¶ 10. The first-floor NRC shower rooms have identical measurements – 48 inches along the back wall; one side wall measures 35 ½ inches, while the other side wall measures 31 ½ inches. *Id.* ¶ 11. There are no mounted seats in any of the NRC shower stalls, and none of the showers are designed for a wheelchair user to roll into the shower. *Id.* ¶¶ 10, 17. Each shower has a "lip" or "curb" that measures at least one-half inch. *Id.* ¶ 13. As of September 25, 2023, grab bars were only located in seven showers in units A, B, F, G, H, I, and J. *Id.* ¶ 15.

---

[2] The Court will refer to the classes as the "NRC class" and the "Pinckneyville class" in this Opinion.

[3] The Court cites to Plaintiff's response to Defendant's statement of facts as "PRDSOF," Plaintiff's response to Defendant's statement of additional facts as "PRDSOAF," Defendant's response to Plaintiff's statement of fact as "DRPSOF," and Defendant's response to Plaintiff's statement of additional facts as "DRPSOAF."

NRC has various types of portable shower chairs that are provided to inmates upon request.[4] As of March 28, 2025, NRC had these chairs available to inmates:

- A chair that was made of PVC, had fixed arms, four small wheels, a seat height of 20 inches from the finished floor, and a warning stating "MUST USE WITH ASSISTANCE." *Id.* ¶ 31.

- A McKesson "bath bench." *Id.* ¶ 32.

- A seat with a height of 20 inches from the finished floor. *Id.* ¶ 33.[5]

From March 9 to 31, 2022, Plaintiff was a resident at NRC. *Id.* ¶ 8. From March 9 to March 24, he was assigned to Living Unit D, Cell 105, and from March 24 to March 31, he was assigned to Living Unit G, Cell 103. *Id.* While at NRC, Plaintiff was provided a "plastic lawn chair" to use in the shower. *Id.* ¶ 22. Correctional staff brought a chair from a storage closet and placed it into the shower to allow Plaintiff to maneuver in. PRDSOF ¶ 55. Correctional staff would also oversee Plaintiff's transfer into the shower and then move Plaintiff's wheelchair out of the way so that the door to the shower could be closed. *Id.* ¶ 56. According to Plaintiff, he had difficulty getting into and staying on the chair as well as maneuvering, sitting, and washing while in the chair. DRPSOF ¶ 22. When Plaintiff was housed in Living Unit D, the showers did not have grab bars. *Id.* ¶ 24. Plaintiff submitted a grievance, dated March 17, 2022, complaining about the lack of grab bars, the plastic lawn chair he was provided for his shower, and that the shower rooms were not "handicap accessible." *Id.* IDOC stamped the grievance as received on March 28, 2022. *Id.* Plaintiff also fell in the presence of an officer while attempting to transfer to a chair "placed halfway out of the shower" on Living Unit G. *Id.* ¶ 25.

## II.   Pinckneyville

Pinckneyville opened in 1998. *Id.* ¶ 43. The general population showers in housing units 1 to 6 at Pinckneyville are all larger than 30 inches by 60 inches. *Id.* ¶ 45. While the architectural drawings for Pinckneyville depict folding security shower seats for certain showers in housing units 1 to 4, the only mounted folding shower seat presently at Pinckneyville is located in the Health Care Unit. *Id.* ¶¶ 44, 54. In housing units 1 through 4, there are two curbs to enter the shower rooms. *Id.* ¶ 47. Every shower room on the first floor of buildings 1 through 5 at Pinckneyville has a curb that measures at least ½ inch. *Id.* ¶ 48.[6] Approximately five years ago,

---

[4] The specifics of IDOC's practice of providing shower chairs at NRC are disputed by the parties, but for the reasons described below, the Court need not resolve the issues.

[5] There is disputed evidence that NRC also provides additional types of shower chairs, such as a "bariatric" chair. The court need not resolve the issue because, as described below, Defendant has failed to demonstrate that its practice of offering a portable shower chair, regardless of the type of chair, constitutes equivalent access.

[6] Defendant objects that this fact is immaterial because Plaintiff's architect, who took the measurements, did not determine whether the curbs impact wheelchair accessibility or whether they are "beveled, rounded, inclined, or otherwise modified to allow a wheelchair user to pass over them." Subject to these objections, Defendant admits this fact. Because Defendant does not dispute the actual measurements, the Court deems the fact of the curb measurements as admitted.

3

the Pinckneyville Health Care Unit Administrator, who has also served as the facility's ADA coordinator, requested that maintenance measure the curb or lip to enter the showers in buildings 1 through 5. *Id.* ¶ 55. She then "look[ed] it up in the book" and "Googled" and concluded it was within ADA limits. *Id.*

Plaintiff was transferred to Pinckneyville on March 31, 2022, and was housed there until August 5, 2022. *Id.* ¶ 42. Plaintiff completed an "Individual in Custody Request" at Pinckneyville on March 31, 2022, stating, "I would like to be given ADA showers & I need a urinal I am paralyzed," and a medical record generated the following day states that Plaintiff is a "paraplegic in w/c" and "need[s] an order for an ADA shower." DRPSOAF ¶ 27.[7] From March 31 to April 4, 2022, Plaintiff was housed in Building 6. DRPSOF ¶ 42. From April 4 to June 22, 2022, he was assigned to Building 4, Wing B. *Id.* From June 22 to August 5, 2022, he was assigned to Building 3, Wing C. *Id.*

While at Pinckneyville, Plaintiff was provided with a chair to use in the shower that had small wheels. *Id.* ¶ 63. Plaintiff described the chair as not safe. *Id.* Plaintiff testified that in order to shower, he would either ask an inmate worker to hold the chair for him, or he would prop it up against the wall. *Id.* ¶ 60. Plaintiff fell more times while using the Pinckneyville showers than the NRC showers, and inmates had to assist him after his falls. *Id.* ¶ 64.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The standards for summary judgment remain the same when addressing cross-motions for summary judgment: the court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC. v. Int'l Union of Operating Eng'rs, Local Union 150, ALF-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

---

[7] Defendant objects that this fact is "immaterial" because Plaintiff had a permit for an ADA shower and cell at Pinckneyville but otherwise does not dispute it. The Court finds that this fact is material because it is evidence of Defendant's awareness that Plaintiff needed an ADA accommodation and deems it admitted.

## Discussion

I. **Certified Issues as to the NRC Class**

    a. **The First Certified Issue**

        The parties have filed cross motions for summary judgment on the certified issues for the NRC class. As stated above, the first certified issue is whether the ADA and Rehabilitation Act standards apply to the showers at NRC. Two sets of standards are relevant to this Opinion – the Americans with Disabilities Act Standards for Accessible Design (the "1991 Standards" and the "2010 Standards") and the Uniform Federal Accessibility Standards ("UFAS"). Under the Rehabilitation Act, construction or alteration of buildings after March 7, 1988, must comply with UFAS. 28 CFR § 42.522(b). Under the ADA, the applicable guideline is determined by the age of the building. "If physical construction or alterations commence after July 26, 1992, but prior to September 15, 2010, then new construction and alterations . . . must comply with either UFAS or the 1991 Standards." 28 C.F.R. § 35.151(c)(1). "If physical construction or alterations commence on or after March 15, 2012, then new construction and alterations . . . shall comply with the 2010 Standards." *Id.* § 35.151(c)(3). The Court notes that the shower guidelines under the ADA Standards and UFAS that are relevant to this Opinion are materially identical.

        Neither party disputes that the 1991 Standards apply to NRC. It is also undisputed that NRC was built after 1988 and that IDOC receives federal funding, so UFAS also applies via the Rehabilitation Act. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Thus, Plaintiff is entitled to summary judgment as to the first certified issue for the NRC class.

    b. **The Second Certified Issue**

        As to the second certified issue – whether the standards were violated due to structural barriers and lack of mounted seats at NRC – Plaintiff argues that the undisputed facts show that the NRC general population showers violate the 1991 Standards and UFAS due to their size, the presence of curbs, the lack of grab bars, the height of the faucets and controls, and the lack of a safe place for wheelchair users to sit. Defendant counters that there is a dispute of material fact as to whether the showers violate the guidelines. Defendant further argues that summary judgment should be granted in her favor because, notwithstanding any technical violations of the guidelines, IDOC provided equivalent access by providing portable shower chairs upon request to disabled inmates. These issues are further addressed below.

        i. **Alleged Violations**

        **Size**. It is undisputed that the NRC showers are 48 inches along the back wall, with one side wall measuring 35 ½ inches and the other measuring 31 ½ inches. DRPSOF ¶ 11. The 1991 Standards allow for showers that are either 36 inches by 36 inches exactly or 30 inches by 60 inches minimum. 1991 Standards § 4.21.2. Similarly, UFAS provides for showers that are 36 inches by 36 inches exactly or 30 inches by 60 inches. UFAS § 4.21.2. In her briefing, Defendant concedes that the NRC showers are "not in technical compliance" with the Standards. On this record, no reasonable jury could find that the showers comply with the technical requirements of the accessibility standards given their size.

**Presence of curbs.** As to the curbs, the 1991 Standards and UFAS only allow curbs in showers that are 36 inches by 36 inches, and they must be no taller than ½ inch. 1991 Standards § 4.21.7; UFAS § 4.21.7. The standards do not allow curbs in showers that are 30 inches by 60 inches. Here, there is undisputed evidence that some of the curbs in the NRC showers are taller than ½ inch. Such curbs violate the standards. Similarly, while some of the curbs in the NRC showers are ½ inch or shorter, such curbs are only permitted in showers that are 36 inches by 36 inches. It is undisputed that the showers at NRC are not 36 inches by 36 inches, so the presence of the ½ inch curbs also violates the Standards and UFAS.[8]

**Grab bars.** Plaintiff's concern seems to be that, as of September 2023, only seven housing units had showers with grab bars. Grab bars are certainly required in accessible showers, and there could be an ADA violation if an inmate with a disability was housed in a unit where none of the showers have grab bars. But neither the ADA Standards nor UFAS require that *all* showers have grab bars. Neither party has addressed how many accessible showers are required under the 1991 Standards and UFAS for a facility such as NRC. On this record, the Court cannot find that the showers at NRC violate the ADA due to the lack of grab bars.

**Faucets and controls.** To establish that the faucets and controls in the NRC showers violate federal accessibility standards, Plaintiff only offers the vague testimony of a former assistant warden of NRC that the "water valves have to be adjusted" to be ADA-compliant. Plaintiff has not offered measurements or any other undisputed facts to demonstrate that the faucets and controls are not in compliance with the technical requirements of the 1991 Guidelines and UFAS. This is insufficient for the Court to conclude that no reasonable juror could find that the faucets and controls in the NRC showers violate federal accessibility standards.

**Lack of space to sit.** Finally, Plaintiff argues that the NRC showers lack a safe place for a wheelchair user to sit and that Plaintiff was provided a "plastic lawn chair" for showering. The Court has previously concluded that because a mounted shower seat is only required in showers that are 36 inches by 36 inches, and because the NRC showers are not those dimensions, the showers do not violate the standards due to the lack of seats. *See* [180] at 10–11.

### ii. Equivalent Access

From the above, the Court concludes that the showers at NRC violate federal accessibility standards due to their dimensions and the presence of curbs. However, this does not end the inquiry because both the ADA and Rehabilitation Act contain "equivalent access" provisions that allow for departures from the technical requirements in certain circumstances. Title II of the ADA states that "[d]epartures from particular requirements of [the federal accessibility standards] by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility

---

[8] Defendant argues that "curb" is not defined in the standards and the evidence indicates that the elevation changes in the NRC showers are sloped or beveled, so there is a dispute of material fact as to whether the elevation changes are considered "curbs" under the standards. However, the only evidence Defendant cites is testimony from the former assistant warden who testified about the shower curb in the infirmary, not the general population showers. The testimony is silent about whether the curbs in the NRC housing units are beveled or sloped. The Court therefore disregards this argument.

or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1), (2). Put differently, "[t]o permissibly deviate from the ADA's structural requirements, the alternative must provide equivalent or greater access than would full compliance with the ADA's structural requirements." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1069 (N.D. Ill. 2016) (citing 28 C.F.R. § 35.151(c)(1)). The Rehabilitation Act regulations contain a similar provision. *See* 28 C.F.R. § 42.522(b)(1) ("Departures from particular technical and scoping requirements of UFAS by the use of other methods are permitted where substantially equivalent or greater access to and usability of the building is provided.").

Defendant maintains that the issue of equivalent access cannot be decided on a class-wide basis because some class members were provided stable shower chairs. As a general matter, the Seventh Circuit has found that evaluating whether federal accessibility standards apply and were violated can be determined on a class-wide basis, albeit without specifically addressing the issue of equivalent access. In *Bennett v. Dart*, the Seventh Circuit vacated a district court's decision denying class certification for a proposed class of detainees in the Cook County Jail. 953 F.3d 467, 469 (7th Cir. 2020) (per curiam). In that case, the plaintiff proposed a class of detainees who need canes, crutches, or walkers and identified a common question of whether Division 10 of the Cook County Jail must comply with UFAS. *Id.* at 468–69. In vacating the district court's decision, the Seventh Circuit explained that the plaintiff "proposes a class that will win if the Standards apply (*and were violated, to detainees' detriment*) and otherwise will lose. That's how class actions should proceed." *Id.* at 469 (emphasis added).

The district court later decertified the class, and the plaintiff again appealed the decision to the Seventh Circuit. *See Bennett v. Dart*, 53 F.4th 419 (7th Cir. 2022) (per curiam). In reversing the class-decertification order, the court remarked that "the class as certified presents what appears to be a straightforward question about whether Division 10 [of the Cook County Jail] complies with the Standards." *Id.* at 420. The court noted that a class action can be maintained with respect to particular issues under Rule 23(c)(4) and that its earlier decision identified such an issue (i.e., whether the Standards apply and were violated). The court went on to state:

> A class certified under Rule 23(c)(4) resolves the *issue*, not the whole case. Class members would receive the benefit of a declaratory judgment (if the class prevails) on the issue but would need to proceed in individual suits to seek damages; by contrast, if the class loses, every detainee would be bound through the doctrine of issue preclusion. We do not see—and the district judge did not explain—why application of the Standards cannot be determined class-wide, while leaving to the future any particular inmate's claim to other relief.

*Id.* (emphasis in original). The Court acknowledges that determining whether the federal accessibility standards were violated is not as straightforward as simply comparing measurements, given the equivalent access provisions. But it is not impossible and will be dependent on the circumstances of each case. *See Walker v. Dart et al*, 2025 WL 3496580, at *3 (N.D. Ill. Dec. 5, 2025) (evaluating equivalent access on a class-wide basis and granting summary judgment for plaintiff class after concluding that no reasonable factfinder could find that defendant's purported ramp policy provided equivalent access). Here, there is only one method that Defendant offers as providing equivalent access to wheelchair users at NRC and Pinckneyville—the use of portable shower chairs. Thus, the issue of equivalent access applies universally to all class members and

7

therefore does not raise the kinds of individual circumstances that could defeat class certification. The Court might come to a different conclusion if the Defendant put forth evidence that it had a variety of practices and methods that provide equivalent access, but such is not the case here. The fact that different types of shower chairs were provided does not change this outcome, as described below.

Defendant maintains that summary judgment on the second certified issue should be granted in her favor because IDOC provided equivalent access by providing portable shower chairs to inmates at NRC upon request. Plaintiff responds that such a practice does not constitute equivalent access. Both sides argue that the other has the burden when it comes to the issue of equivalent access. As another court has aptly noted, "The law is sparse on the allocation of the burden of proof on these issues." *Cherry v. City Coll. of San Francisco*, 2006 WL 6602454, at *5 (N.D. Cal. Jan. 12, 2006). However, multiple district courts, including one in this district, have persuasively concluded that based on the ADA's plain language, the burden falls on the defendant entity to demonstrate equivalent access. *See, e.g.*, *Spence v. Dart*, 2020 WL 4677053, at *2 (N.D. Ill. Aug. 12, 2020) ("As indicated by the language of this regulation, a public entity that does not comply with the ADA standards has the burden of demonstrating that an alternative method provides equivalent access."); *Cherry*, 2006 WL 6602454, at *5 ("Since the regulations themselves state that equivalence must be 'clearly evident,' the entity should bear the burden of proof on this issue."); *see also Clemons*, 168 F. Supp. 3d at 1069 (concluding that because prison cells did not comply with the ADA's structural requirements and "the Sheriff's Department has failed to show that [plaintiff] was provided equivalent access, there can be no dispute that the defendants failed to comply with Article II of the ADA"). The Department of Justice (DOJ) has also advised that it believes the "responsibility" for "demonstrating equivalent facilitation properly rests with the covered entity." Dep't of Justice, *Guidance on the 2010 ADA Standards for Accessible Design* (Sept. 15, 2010), https://www.ada.gov/law-and-regs/design-standards/standards-guidance/#section-by-section-analysis-with-public-comments. For these reasons, the Court concludes that Defendant bears the burden of establishing that it is clearly evident that an alternative provides equivalent or greater access.

### iii. Equivalent Access – Defendant's Motion

Starting with Defendant's motion for summary judgment, Defendant argues that she is entitled to summary judgment, notwithstanding any technical violations of the 1991 Standards, because the portable shower chairs at NRC provide equivalent access. As stated above, Defendant bears the burden on this issue. When viewing the evidence in the light most favorable to Plaintiff, the Court concludes that no reasonable jury could find that Defendant has met her burden on equivalent access.

Defendant maintains that shower chairs are available upon request to each inmate. The exact contours of this practice are unclear from the record, and the parties dispute many of the details, such as which chairs are provided and where they are stored. However, even assuming NRC has a practice of providing portable shower chairs upon request, it does not satisfy Defendant's burden. Courts in this district have consistently found that an alternative that renders an inmate reliant on others for assistance does not constitute equivalent access. *See Clemons*, 168 F. Supp. 3d at 1069 (availability of around-the-clock nursing care is not equivalent access); *Flora v. Dart*, 2017 WL 2152392, at *6 (N.D. Ill. May 17, 2017) (vacated by agreement of the parties) (accommodations that render inmate dependent on others to use the bathroom or shower do not

8

provide equivalent access)[9]; *Roberts v. Dart*, 2018 WL 1184735, at *4 (N.D. Ill. Mar. 7, 2018) (jail did not provide equivalent access when it housed inmate in non-compliant cell and required him to request assistance and be escorted to a bathroom with grab bars in the dayroom); *Walker*, 2025 WL 3496580, at *3 (policy of having correctional officers available to assist wheelchair users up and down a non-compliant ramp does not constitute equivalent access).

In *Clemons v. Dart*, the district court held that the availability of "around-the-clock nursing care" to assist with all needs, including the use of shower or toilet chairs, did not provide equivalent access instead of compliance with the ADA structural standards. The court explained that the ADA Accessibility Guidelines "make clear that the purpose of the equivalent facilitation provision is to allow for flexibility in *design* for unique and special circumstances and to facilitate the application of new disability accommodating *technologies*, but makes no mention of *services*." 168 F. Supp. at 1066–67 (emphasis in original). Because the accommodation at issue was a "service," i.e., "the availability of staff assistance upon request[,]" the court concluded that it could not constitute "equivalent access." The court went on to hold that even if providing nursing services could be considered a design or technology, requiring the plaintiff "to rely on nursing assistance[] rather than providing the means for [plaintiff] to address his own basic needs" could not be considered providing equivalent access since "the purpose of the ADA, even in the jail context, is to promote the ability of individuals with disabilities to engage in 'independent living.'" *Id.* at 1069 (quoting 42 U.S.C. § 12101(a)(7)).

The Court finds this case persuasive. Defendant's disputed practice renders inmates reliant on staff to access the showers, regardless of whether a safe or appropriate chair is provided. Taking Defendant's analysis further, carrying an inmate from place to place instead of providing him with compliant walkways and ramps would be deemed equivalent. But that is not the law. No reasonable jury could find that a practice of making a wheelchair user request a portable shower chair, in lieu of providing an ADA or UFAS-compliant shower, constitutes equivalent access. *See Clemons*, 168 F. Supp. 3d at 1066 ("[T]he availability of staff assistance upon request does not constitute equivalent access under the applicable regulations.").

Defendant also argues that portable shower seats are better for some individuals than fixed shower seats. Defendant offers the testimony of former ADA Administrator Andrew Walter, who testified that he believes "a portable chair provided as good or better access than a fixed shower seat" because they are more stable, can hold more weight, and allow an individual to move closer or further from the water spray. PRDSOF ¶¶ 41–43. Plaintiff objects to these facts on various grounds, but even if the Court were to resolve the disputes in Defendant's favor, this evidence does not help Defendant. The testimony cited by Defendant is Walter's response to questions about shower chairs in general, not about any specific shower chairs provided at NRC. This testimony is also plainly inconsistent with the federal accessibility standards, which require mounted shower seats (and not shower chairs) in showers that are 36 inches by 36 inches. Notwithstanding Walter's broad testimony about shower chairs generally, it is also undisputed that current ADA Administrator Michael Hershey found three of the specific shower chairs in use at NRC objectionable. *See* DRPSOF ¶¶ 31, 32, 33. And at least two of the chairs offered by NRC exceed the 19-inch maximum height requirement for a fixed seat under the 1991 Standards and UFAS.

---

[9] This summary judgment decision was vacated by the district court judge, not because the reasoning was flawed or incorrect, but at the request of the defendants, who insisted that the decision be withdrawn as part of a settlement with the plaintiff. *See Flora v. Dart*, 2018 WL 2765919, at *1 (N.D. Ill. June 9, 2018).

9

*See Clemons*, 168 F. Supp. 3d at 1071 (noting the "non-ADA compliant" shower chair "had a seat height of twenty inches, rather than a height of seventeen to nineteen inches required by the ADA.").[10] But even if IDOC provided safe shower chairs that were suitable for showering, the practice of requiring inmates to request a shower chair would still leave inmates impermissibly reliant on the assistance of others.

Defendant also argues that no inmate can shower independently because every inmate has to ask for a shower, be escorted to a single-person shower by an officer, and be locked into the shower. But that misses the point – once escorted to the shower, the inmate without a disability can enter the shower and shower independently; the disabled inmate cannot. Defendant has offered no evidence that the practice of offering portable shower chairs at NRC allows wheelchair users to transfer into the shower and take a shower in the same or greater way than complying with the accessibility guidelines would. In contrast, it is undisputed that correctional officers would retrieve a shower chair for Plaintiff, place it in the shower, and oversee Plaintiff's transfer into the shower, and that Plaintiff had difficulty showering in the chair he was provided and fell when attempting to transfer into the non-compliant shower at NRC.

In summary, Defendant has not shown that the practice of providing a portable shower chair for use in a non-compliant shower provides equal or greater access than a shower that complies with federal accessibility standards. Thus, Defendant has failed to meet her burden on equivalent access. *See Spence*, 2020 WL 4677053, at *5; *Clemons*, 168 F. Supp. 3d at 1069. On this record, no reasonable jury could find that NRC's disputed practice of providing portable shower chairs upon request allows wheelchair users to shower with the same or greater access than if the showers complied with the guidelines. Defendant's motion as to the NRC class is denied.

### iv. Equivalent Access – Plaintiff's Motion

Much of the above discussion of Defendant's motion is relevant to the Court's discussion of Plaintiff's motion on the same issue. Here, Plaintiff has offered undisputed evidence that the showers fail to comply with UFAS and the ADA standards. As noted above, Defendant points to evidence in the record to argue that the use of portable shower chairs provides equivalent access. However, even viewing the evidence in the light most favorable to Defendant, Defendant fails to raise a genuine dispute of material fact as to whether the practice of providing portable shower chairs provides equivalent access. Broad conclusions that shower chairs are better than mounted seats or that some chairs are better for certain individuals do not raise a genuine dispute of material fact, particularly when the ADA and UFAS require mounted shower seats in certain showers. And Defendant presents no genuine dispute of material fact that inmates with disabilities can transfer into the NRC showers and shower using the portable shower chairs with the same degree of independence that a compliant shower would provide.

In response to Plaintiff's motion, Defendant also argues that modifying the dimensions of the NRC showers "may be technically infeasible or burdensome under the Standards" because the walls are load-bearing. [189] at 5. Without citing any supporting record evidence, Defendant

---

[10] Defendant also submits that a 2022 letter from Equip for Equality, a nonprofit disability rights organization, to IDOC suggests that Equip for Equality saw shower chairs as "substantially equivalent." [192] at 12. But the letter does not suggest that the provision of shower chairs provides equivalent access under the law and instead expresses concern that individuals incarcerated at Pinckneyville have been denied proper shower chairs for their individual needs. But even if it did, the Court does not see the relevance of the opinion of a nonprofit organization on a matter of law.

10

argues that "adjusting the dimensions would require demolition and movement of walls on the first floor of the facility, upon [which] upper galleries have been built" and that altering "the dimensions of the showers is technically infeasible because modification of the dimensions would require removing or altering load-bearing members that are an essential part of the structural frame." *Id.* The only record evidence cited by Defendant in support of this argument is the fact that structural changes to IDOC facilities must go through the Illinois Capital Development Board. But that fact does not establish that the shower walls are load-bearing or that modifying the dimensions of the shower walls is "technically infeasible" as defined by the ADA. Defendant offers no evidence as to why the dimensions of the NRC showers cannot be modified. *See Lacy v. Dart*, 2017 WL 11725830, at *3 (N.D. Ill. May 2, 2017), *aff'd sub nom. Lacy v. Cook Cnty., Illinois*, 897 F.3d 847 (7th Cir. 2018) (finding the defendants failed to demonstrate that removing privacy screens was technically infeasible when the witness "could not say that removing the screens would diminish the structural integrity of the wall in a manner that would pose any significant risk" or that "the walls' integrity could not be repaired once the bracing for the screens was removed.").

Because the undisputed facts show that the NRC showers violate the 1991 Standards and UFAS, and Defendant has not raised a genuine dispute that NRC's practice of providing shower chairs constitutes equivalent access, summary judgment on the second certified issue is granted in favor of Plaintiff for the NRC class.

## II. Certified Issues as to the Pinckneyville Class

### a. First Certified Issue

Both parties move for summary judgment on the certified issues for the Pinckneyville class. As to the first issue of whether the ADA and Rehabilitation Act standards apply, the Court notes that it is undisputed that Pinckneyville *opened* in 1998, but neither party discusses when Pinckneyville was constructed. *See* DRPSOF ¶ 43. However, neither party raises this concern or seems to believe this is an issue, so the Court assumes that 1998 is the operative date. Since it is undisputed that IDOC receives federal funding and Pinckneyville was constructed after 1988, UFAS applies. Further, neither party disputes that the ADA standards apply, but there is a dispute as to whether the showers should be evaluated according to the 1991 or 2010 Standards. Defendant argues that the 1991 Standards apply, while Plaintiff maintains that the 2010 Standards apply because Pinckneyville recently modified the showers by installing handrails and privacy screens. Thus, the Court must determine whether the 1991 or 2010 Standards apply.

In response to Plaintiff's argument that the 2010 Standards apply, Defendant points to Section 202 of the 2010 Standards, which is titled "Existing Buildings and Facilities" and provides guidance on additions and alterations.[11] Subsection 202.3 states, "Where existing elements or spaces are altered, each altered element or space shall comply with the applicable requirements" of Chapter 2 of the 2010 Standards. 2010 Standards § 202.3. Defendant also notes that DOJ has provided the following guidance on the scope of this section:

---

[11] Plaintiff does not dispute that this section applies to Pinckneyville. For the avoidance of doubt, the Court notes that under the 2010 Guidelines, "existing facility" is defined as "a facility in existence on any given date, without regard to whether the facility may also be considered newly constructed or altered under this part." 28 C.F.R. § 35.104. The definition of "facility" includes "all or any portion of buildings." *Id.* Based on these definitions, the showers at Pinckneyville would be considered "existing facilities" under the 2010 Standards to which Section 202 applies.

11

> Under section 202.3 of the 2010 Standards entities can alter *as many elements within a room or space as they like without triggering a requirement to make the entire room or space accessible* based on the alteration of individual elements. This does not, however, change the requirement that *if the intent was to alter the entire room or space*, the entire room or space must be made accessible and comply with the applicable requirements of . . . the 2010 Standards.

Dep't of Justice, *Guidance on the 2010 ADA Standards for Accessible Design* 74 (2010), www.ada.gov/regs2010/2010ADAStandards/Guidance_2010ADAStandards_prt.pdf (emphasis added). Defendant maintains that based on this guidance, the modifications to the showers at Pinckneyville did not trigger a requirement to make the entire shower space accessible according to the 2010 Standard because the evidence is "ambivalent" as to the reasoning behind the installation of the handrails. Defendant's argument does not address the installation of the privacy screens.

Notably, there is a dearth of caselaw interpreting section 202.3 of the 2010 Standards and the DOJ guidance. The Court is aware of only one case discussing the DOJ guidance, which is *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847 (7th Cir. 2018). Both sides cite *Lacy* in support of their arguments. In *Lacy*, the defendant county modified two holding cells at a courthouse to bring them into partial compliance with the 2010 Standards. "The County updated the holding cell entryways, replaced the metal benches, and installed new lavatory fixtures and grab bars." *Id.* at 867. The holding cells also contained privacy screens that did not comply with the 2010 Standards because they were too close to the rear wall of the cells, but the County did not modify them. The plaintiff and defendant disputed whether, based on the modifications, the defendant was required to make the privacy screens compliant with the ADA.

Before the district court, the defendants argued that they never intended to alter the entire holding cell or to modify the privacy screens. The district court rejected this argument, noting, "Defendants have repeatedly represented to this court that their intent was to make the holding cells accessible by bringing them up to 2010 Standards." *Lacy v. Dart*, 2017 WL 11725830, at *3 (N.D. Ill. May 2, 2017). The Seventh Circuit affirmed the district court on this point, noting:

> The district court concluded that the County intended to alter the holding cells in their entirety. It based this finding on the defendants' repeated representations that they planned to bring all of the holding cells into compliance with the latest standards. We see no clear error in this factual determination, especially given the circumstantial evidence that the County modified the privacy screens in all of the other renovated holding cells, in line with its supposed plan.

*Lacy*, 897 F.3d at 868–69. Here, the modifications to the Pinckneyville showers were fewer than those in *Lacy*. Only two elements were modified in the showers at Pinckneyville – handrails and privacy screens. In *Lacy*, the defendant modified at least four elements. Unlike in *Lacy*, the modifications of the Pinckneyville showers took place at different points in time and for different reasons. And Plaintiff has not pointed to any evidence that IDOC intended to alter the showers in their entirety. As for the handrails, Plaintiff points to the testimony of the former Warden, who testified that he directed his staff to install the handrails to bring the facility into compliance with the ADA. DRPSOF ¶¶ 35, 37. Plaintiff focuses on this intent, but modifying a single element with an intent to comply with the ADA is not equivalent to an intent to alter an entire space. If that

12

were the standard, any change to any singular element could trigger the requirement to fully comply with the 2010 Standards, which is contrary to the DOJ guidance. And, unlike the defendant in *Lacy*, IDOC has not "repeatedly represented" to this Court that it intended to alter the entirety of the showers to make them fully compliant with the ADA. As for the privacy screens, Plaintiff points to testimony from the former and current ADA administrators that Pinckneyville installed privacy screens within the past three or four years in order to comply with the Prison Rape Elimination Act. DRPSOF ¶¶ 40, 41.[12] But again, there is no testimony that by installing privacy screens, IDOC intended to alter the entire shower space.

In summary, the record evidence does not establish that by installing handrails and privacy screens, IDOC intended to alter the entire showers or shower rooms at Pinckneyville. Instead, the evidence reflects that IDOC installed two discrete elements, for different purposes, at different times. The evidence does not suggest that the modifications were so extensive as to constitute an alteration to the entire space, and Plaintiff has not provided any case law suggesting that modification of two elements within a space triggers the requirement that the entire space must thereafter comply with the 2010 Standards. As such, the 1991 Standards apply to the Pinckneyville showers, except for the handrails and the privacy screens, which must have been installed in compliance with the 2010 Standards. *See* 28 C.F.R. § 35.151(c)(3). Because the federal accessibility standards apply to Pinckneyville as described above, summary judgment is granted in favor of the Pinckneyville class on the first certified issue.

### b. Second Certified Issue

Plaintiff argues that the Pinckneyville class is entitled to summary judgment on the second certified issue because the Pinckneyville showers violate the 1991 Standards and UFAS due to the presence of curbs.[13] Under the 1991 Standards, "[s]hower stalls that are 30 in by 60 in (760 mm by 1525 mm) minimum shall not have curbs." 1991 Standards § 4.21.7. Similarly, UFAS states, "Shower stalls that are 30 in by 60 in (760 mm by 1525 mm) shall not have curbs." UFAS § 4.21.7. Here, it is undisputed that the general population shower stalls in housing units 1 to 6 at Pinckneyville are all larger than 30 inches by 60 inches. DRPSOF ¶ 45. Defendant's 30(b)(6) witness testified that all showers designated for Pinckneyville "have curbs" except for the shower rooms in Building 6. *Id.* ¶ 46. It is also undisputed that there are two curbs to enter the shower rooms in housing units 1 to 4. *Id.* ¶ 47. Thus, the record evidence, even viewing in the light most favorable to Defendant, demonstrates that the Pinckneyville showers do not comply with the structural requirements of the 1991 Standards or UFAS due to the presence of curbs.

In opposition to Plaintiff's motion, Defendant makes a similar argument as she did regarding the curbs at NRC. Defendant argues that "curb" is not defined in the standards, and the evidence indicates that the "elevation changes" within the Pinckneyville showers are sloped or

---

[12] Defendant objects that these facts are immaterial but doesn't dispute them. The Court finds that the facts regarding the installation of the privacy screens is material to determining which ADA Standards apply.

[13] Plaintiff argues in the alternative that the Pinckneyville showers violate the 2010 Standards due to the lack of mounted shower seats, and both parties discuss the shower chairs provided at Pinckneyville. Having determined that the 1991 Standards apply to the Pinckneyville showers, the Court does not address those arguments.

beveled, so there is a dispute of material fact as to whether the elevation changes are considered "curbs" under the Standards. [189] at 9. Plaintiff responds that Defendant's argument is "illogical" and points out that the 1991 Standards and UFAS allow for a curb up to ½ inches in a 36 inch by 36 inch shower, so the "only textually permissible interpretation whether the curbs may be present in [a] shower that is 30 inches by 60 inches minimum must be 'no.'" [198] at 10. The Court finds that Plaintiff has the better argument. A court should not read into a statute words that are not there or meaning that contradicts the plain text. *See AOT Holding AG v. Archer Daniels Midland CO.*, 2022 WL 22393243, at *5 (C.D. Ill. Sept. 30, 2022) ("Under the 'casus omissus pro omisso habendus est' canon, a statute should not be read to include matter it does not include."). There is no text suggesting that beveled or rounded curbs, or other elevation changes, are permissible in roll-in showers. The standards clearly allow curbs in showers that are 36 inches by 36 inches, and explicitly state that no curbs are permitted in showers that are 30 inches by 60 inches. There is no exception for curbs that are rounded or beveled. Having rejected this argument, the Court finds that Defendant has failed to raise a genuine dispute of material fact as to whether the Pinckneyville showers violate the 1991 Standards.

In support of her motion for summary judgment, Defendant argues that IDOC provided equivalent access at Pinckneyville by providing portable shower chairs. This argument appears to be in response to Plaintiff's argument that the showers violate the 2010 Standards due to the lack of mounted seats, an argument the Court does not address, having concluded that the 1991 Standards are the relevant guidelines. But even if the Court construes Defendant's argument as applicable to the non-compliant curbs, such a practice does not constitute equivalent access for the reasons stated above. Defendant has offered no other evidence or argument as to whether IDOC provided equivalent access in relation to the non-compliant curbs at Pinckneyville and is therefore not entitled to summary judgment. Because the Pinckneyville showers violate the 1991 Standards and UFAS, and Defendant failed to demonstrate that equivalent access is provided at Pinckneyville, summary judgment for Plaintiff on the second certified issue for the Pinckneyville class is granted.

### III. Defendant's Motion for Summary Judgment on Plaintiff's Individual Claims

Defendant also moves for summary judgment on Plaintiff's individual ADA and Rehabilitation Act claims concerning his incarceration at NRC and Pinckneyville. To prevail under either statute, Plaintiff must show "that he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (internal quotation marks omitted). The Rehabilitation Act contains an additional element – that the entity receives federal financial assistance – which is not in dispute.[14] To obtain compensatory damages, a Plaintiff must establish intentional discrimination. "[A] plaintiff can establish intentional discrimination in a

---

[14] Defendant has raised a sovereign immunity defense to Plaintiff's ADA claims. The Seventh Circuit has not yet decided whether the ADA validly abrogates sovereign immunity for conduct that does not independently violate the Constitution. However, because Plaintiff has brought claims under both the ADA and the Rehabilitation Act (for which there is no sovereign immunity), the Court can "dispense" with the "thorny issue" of sovereign immunity because relief under the ADA and the Rehabilitation Act are co-extensive and Plaintiff can only have one recovery. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

Title II damage action by showing deliberate indifference." *Lacy*, 897 F.3d at 863. The Seventh Circuit has adopted a two-part standard for deliberate indifference: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (internal quotation marks omitted). "Mere negligence is insufficient" to establish deliberate indifference. *Strominger v. Brock*, 592 F. App'x 508, 512 (7th Cir. 2014).

### a. Plaintiff's Claims Regarding NRC

As to Plaintiff's claims regarding his incarceration at NRC, neither party disputes that Plaintiff is a qualified person with a disability. Defendant also does not dispute that Plaintiff was denied access to showers on the same basis as inmates without disabilities at NRC, nor does she argue that the plastic shower chair provided to Plaintiff constituted equivalent access. Instead, Defendant argues that she is entitled to summary judgment on Plaintiff's individual NRC claim because no reasonable jury could find that IDOC acted with deliberate indifference. Defendant also argues that she was not on notice that Plaintiff needed an accommodation.

Plaintiff responds that he didn't need to request an accommodation because his need for an accommodation was obvious. Plaintiff also points to undisputed record evidence that Plaintiff did request an accommodation during his intake at NRC. Plaintiff further argues that the record supports a finding of deliberate indifference because he was denied access to an ADA-compliant shower for five months, and the "accommodation" offered in the form of the plastic shower chair was inadequate.

When viewing the record in the light most favorable to Plaintiff, the Court concludes there is evidence from which a reasonable jury could find that Defendant knew that harm to a federally protected right was substantially likely and that Defendant was deliberately indifferent to that harm. Plaintiff is correct that when the need for an accommodation is obvious, an inmate need not affirmatively request an accommodation. *See Clemons*, 168 F. Supp. 3d at 1070 ("[I]t could hardly have been more apparent that [plaintiff], who spends his every waking moment confined to a wheelchair, was in need of ADA compliant facilities."). Plaintiff did not need to grieve or otherwise affirmatively request ADA accommodations because "the ADA embodies no such requirement." *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 926 (N.D. Ill. 2009). But even if Plaintiff needed to affirmatively request an accommodation, the undisputed evidence shows that the NRC *was* put on notice that Plaintiff needed ADA accommodations. Plaintiff's medical intake form at NRC stated "ADA!" and called for him to use a shower chair. PRDSOAF ¶ 7. Thus, a reasonable jury could find for Plaintiff on the knowledge element of deliberate indifference. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.").

As to the failure to act prong, it is undisputed that Plaintiff was only provided with non-ADA-compliant showers and a plastic lawn chair during his time at NRC. Defendant has not pointed to any record evidence that it did anything else specifically in response to Plaintiff's needs

while he was housed at the NRC. Thus, when viewing the evidence in the light most favorable to Plaintiff, a jury could find that Defendant knew that a harm to a federally protected right was substantially likely and failed to act upon that likelihood. Remarkably, Defendant begins her motion by seemingly conceding there is an issue of fact as to whether Plaintiff was injured, which warrants denial of summary judgment. *See* [192] at 2. In any event, it is undisputed that Plaintiff fell in the presence of an officer at NRC, and Defendant cites no authority that some other physical injury is required or that a fall cannot constitute a physical injury. Thus, for the reasons stated above, Defendant's motion for summary judgment on Plaintiff's individual claims regarding NRC is denied.

### b. Plaintiff's Claims Regarding Pinckneyville

Defendant also moves for summary judgment on Plaintiff's individual claims concerning his incarceration at Pinckneyville. Defendant argues that summary judgment should be granted in her favor because no reasonable trier of fact could find that IDOC showed deliberate indifference towards Plaintiff during his incarceration and that Plaintiff was required to file a grievance if he had difficulty rolling over the curbs in the Pinckneyville showers. Defendant also argues that the facility believed it was complying with federal standards based on evidence related to a prior complaint, where the ADA coordinator concluded the Pinckneyville showers complied with the ADA.

When viewing the record in the light most favorable to Plaintiff, there is record evidence from which a reasonable jury could find that Defendant acted with deliberate indifference. As to the knowledge prong, as stated above, Plaintiff did not need to specifically ask for an accommodation or file a grievance, but the undisputed evidence shows that he did request an accommodation as soon as he was transferred to Pinckneyville. Plaintiff completed an "Individual in Custody Request" form at Pinckneyville stating, "I would like to be given ADA showers & I need a urinal I am paralyzed," and a medical record generated the following day states that Plaintiff is a "paraplegic in w/c" and "need[s] an order for an ADA shower." DRPSOAF ¶ 27. Further, although Defendant maintains that IDOC thought it was complying with the ADA based on an experience with a prior complaint, a reasonable jury could find that IDOC was aware of the accessibility requirements, given that aspects of the Pinckneyville showers do comply with the guidelines, such as their dimensions. *See Torres v. Blum*, 2023 WL 2743548, at *11 (S.D. Ill. Mar. 31, 2023) (denying defendant's motion for summary judgment and rejecting defendant's argument that it could not have been deliberately indifferent if it didn't know toilets lacked grab bars). Defendant's knowledge is further established by the fact that the ADA imposes an affirmative obligation on public entities to comply with the federal accessibility standards. *See id.* at *12 ("[T]he toilet was constructed/installed after 1992 and therefore the prison had an affirmative obligation to ensure that it complied with accessibility standards from the moment it was constructed.").

As to the failure to act prong, the record evidence demonstrates that Plaintiff was provided with a non-compliant shower and was only offered a plastic shower chair that caused him to fall while attempting to shower. The undisputed evidence also demonstrates that IDOC has not removed the prohibited curbs. When viewing the evidence in the light most favorable to Plaintiff,

16

a jury could find that Defendant failed to act based on these facts.[15] *See Clemons*, 168 F. Supp. 3d at 1071 (concluding that defendant failed to prevent plaintiff's statutory rights from being violated when plaintiff was housed in a non-ADA-compliant cell despite the availability of ADA-compliant cells). For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's individual Pinckneyville claim is denied.

### c. Restoration Act Claim

After class certification was granted in this case, Plaintiff supplemented the Complaint to add a claim under the Illinois Civil Rights Remedies Restoration Act (Restoration Act). *See* [95]. Defendant moves for summary judgment on Plaintiff's individual claim under this statute. Defendant contends that the effective date of the Act is January 1, 2024, and it does not apply retroactively to a person like Plaintiff who was released from custody in 2022. [192] at 14–15. Plaintiff responds that he does not assert this claim for relief individually and "only requests to apply this claim to class members incarcerated in either NRC or Pinckneyville from January 1, 2024 to the date of entry of judgment." [198] at 2 n.2.

Because Plaintiff concedes he has not brought a claim under the Restoration Act, Defendant's motion is denied as moot. In reply, Defendant raises an important point—the Restoration Act claim is not a certified class issue, and Defendant argues that such a claim cannot be brought by the Plaintiff individually or on behalf of the class. [202] at 2. Defendant maintains that the Restoration Act claim should therefore be dismissed. The Court requests clarification from the parties as to whether this claim should remain in this case, given that it is not a claim that has been certified as part of the class issues, and Plaintiff does not assert this claim individually.

### Conclusion

For the reasons stated above, Defendant's motion for summary judgment [190] is denied. Plaintiff's motion for partial summary judgment [184] is granted. By January 16, 2026, the parties are instructed to file a joint status report addressing the Restoration Act claim.

**SO ORDERED.**

Dated: December 19, 2025

Sunil R. Harjani
United States District Judge

---

[15] Defendant also advances an argument that Plaintiff failed to provide any evidence that he suffered a physical injury, which is required for any claim for money damages by a person in custody. Plaintiff was not in custody at the time he filed his case, so this requirement does not apply to him. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

17